RAY, J.
A jury found Thomas Partlow guilty of first-degree murder (Count One) and robbery with a deadly weapon (Count Two). The trial court adjudicated him guilty of both offenses and sentenced Partlow to a mandatory life sentence without eligibility for parole on Count One pursuant to section 775.082(1), Florida Statutes (2009), and to 45 years’ incarceration on Count Two. The court ordered the sentences to run consecutively. When he committed these crimes, Partlow was sixteen years old. Partlow argues two points on appeal: 1) the trial court erred by denying his motion to suppress, as there was no well-founded or reasonable suspicion of criminal activity to detain him, and 2) his sentence of life without eligibility for parole constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. Finding no error by the trial court on the suppression issue, we affirm Partlow’s convictions on both counts. In light of the United States Supreme Court’s recent decision in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), we reverse Part- *1029 low’s mandatory life sentence for first-degree murder and remand for resentencing on the authority of Washington v. State, 103 So.3d 917 (Fla. 1st DCA 2012).[1] We write further to explain why the trial court correctly denied the motion to suppress.
Partlow moved to suppress his statements and all physical evidence obtained during an alleged unlawful investigatory detention. The trial court denied the motion after an evidentiary hearing. This ruling raises a mixed question of law and fact that ultimately determines Part-low’s constitutional rights. See Brye v. State, 927 So.2d 78, 80 (Fla. 1st DCA 2006). In such instances, we “defer[] to the trial court on issues of historical fact but conduct[] a de novo review of the constitutional issue.” Connor v. State, 803 So.2d 598, 605 (Fla.2001); see United States v. Bajakajian, 524 U.S. 321, 336-37 & n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We interpret the evidence and all reasonable inferences in favor of sustaining the trial court’s ruling on a motion to suppress. Johnson v. State, 438 So.2d 774, 776 (Fla.1983).
The pertinent facts are as follows. At around 9:00 P.M. on January 25, 2010, brothers Larry and Lonny Jones were driving home from seminary school. They observed two young black males, who exited a car and soon became involved in what appeared to be “a struggle” with a third male in a parking lot. This occurred near a business that was closed for the day. These eyewitness brothers stated that another person, the driver, remained in the car during this incident. As the brothers turned their own car around, the two young black males returned to the vehicle in the parking lot and left the scene. Rather than pursue the vehicle, the brothers rendered assistance to the dying victim, who said he had been robbed and stabbed. When the police arrived at the scene, the brothers described the automobile as a white, four-door sedan, possibly a “Chevy” Malibu, with different-colored bondo (a paste sprayed on the surface, which hardens to cover or seal damage) on the front passenger’s side bumper or fender. A “be-on-the-lookout” (BOLO) report went out to law enforcement. The BOLO described two or three young black males occupying a white, four-door Chevy Malibu or Monte Carlo sedan with bondo covering damage to the right front bumper.
At approximately 2:00 P.M. on January 28, 2010, Officer Sarria observed a passing white Chevy Malibu with bondo covering damage to the right front bumper. This sighting occurred fewer than three miles from where the stabbing took place, and it was the only ear the officer had seen that matched the specific BOLO description. Several young black males were in the car. Officer Sarria followed the Chevy Malibu until it parked at a house, and then he *1030 positioned his patrol vehicle in a hiding place while awaiting additional police support. As the driver of the Chevy Malibu exited the car, the police approached and detained him and the other occupants, including Partlow. After the police read Partlow his rights and obtained his signed waiver of rights form, Partlow admitted his active participation in the crimes. Specifically, Partlow stated that he and two other juvenile co-defendants had targeted a pedestrian, the victim. A co-defendant forcibly took three dollars from the victim and handed the money to Partlow, who stabbed the victim in the chest with a knife as the victim attempted to run away. The autopsy of the victim concluded that the stab wound to the victim’s chest resulted in extensive hemorrhaging in the chest cavity and was the cause of death.
The motion to suppress contended that the police lacked a legitimate basis to justify an investigatory stop and detention. Under the Conformity Clause in article I, section 12 of the Florida Constitution, we must construe the Fourth Amendment according to the United States Supreme Court’s own interpretation. State v. Setzler, 667 So.2d 343, 344 (Fla. 1st DCA 1995). It is well-established that “[wjith-out a founded suspicion of criminal activity, a police officer does not have the right to detain a person absent that person’s consent.” Gaffney v. State, 974 So.2d 425, 426 (Fla. 2d DCA 2007) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)); see § 901.151, Fla. Stat. (2009) (setting out the circumstances in which an officer has authority to temporarily detain a person). In Hunter v. State, 660 So.2d 244, 249 (Fla.1995), the Florida Supreme Court explained that “[a] ‘founded suspicion’ is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge.”
In deciding whether an officer had a reasonable, well-founded suspicion of criminal activity to warrant an investigatory detention, the trial court must consider the totality of the circumstances. Huffman v. State, 937 So.2d 202, 206 (Fla. 1st DCA 2006). Among the relevant factors in determining the legality of a temporary investigatory detention based on a BOLO are “the length of time and distance from the offense,” the “specificity of the description of the vehicle and its occupants,” and “the source of the BOLO information.” Hunter, 660 So.2d at 249; see State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). Given the totality of the circumstances, the trial court concluded that the police had legitimate grounds and acted reasonably in detaining and investigating the occupants of the Chevy Malibu.
The law supports the denial of the motion to suppress. See Hunter, 660 So.2d at 249; Setzler, 667 So.2d at 343; Coney v. State, 341 So.2d 238 (Fla. 3d DCA 1976). In Coney v. State, the officer received a BOLO describing a white 1968 vehicle, possibly a Chevrolet, having numerous rust spots, a temporary Florida license plate, and two black male occupants, one of whom wore a hat and had a goatee. Id. at 239. Several hours later, the officer observed a car and its occupants closely matching the BOLO. The officer stopped the car and requested identification. Within minutes, a second officer arrived at the site and recognized inside the car an item stolen from his home ten days earlier. The police arrested the suspects. The Third District Court affirmed because this was a reasonable investigatory stop and detention. Id.
For similar reasons, the officers in the instant case had a legitimate basis to de *1031 tain and investigate Partlow and the other occupants of the Chevy Malibu. The strength of the other relevant Hunter factors — the two eyewitness sources of the information, the specificity of their descriptions of the automobile and its occupants, the fact that the officer saw no other vehicle closely matching the BOLO description, and the geographical proximity between the crime site and the detention — mitigates any concern we may have had about the lapse of 2-1/2 days between the BOLO and the sighting of the ear.[2]
The trial court correctly denied Part-low’s motion to suppress. We affirm the conviction and sentence for robbery with a deadly weapon in Count Two. We affirm the conviction for first-degree murder but vacate the sentence in Count One and remand for resentencing.
WOLF, J., CONCURS WITH OPINION; MAKAR, J., CONCURS IN PART, DISSENTS IN PART WITH OPINION.

. In Washington, this Court expressly declined to address the sentencing options available to the trial court on remand and left open the possibility for the juvenile defendant in that case to again be sentenced to life without the possibility of parole should the court deem such sentence justified after conducting the individualized inquiry required by Miller. The State argues that the only sentencing option available to the trial court is a mandatory sentence of life, with a possibility of parole in twenty-five years, pursuant to the "revival" of section 775.082(1), Florida Statutes (1993). The merits of the State’s position are fully articulated and advanced in Judge Makar’s opinion below. Adopting his own concurring opinion in Washington, Judge Wolf advocates resentencing for a term of years without the possibility of parole. We do not pass on the revival option, or any other sentencing option, at this juncture to avoid intra-district conflict with Washington and the potential for disparate sentencing treatment of similarly situated juveniles.

.The three cases on which Partlow primarily relies for reversal are materially distinguishable. Rodriguez v. State, 948 So.2d 912 (Fla. 4th DCA 2007) (concluding that the police lacked a reasonable, well-founded suspicion of criminal activity, where the actual source of the BOLO facts was unclear and the police observed no suspicious activity before the stop); Sapp v. State, 763 So.2d 1257 (Fla. 4th DCA 2000) (reversing an order denying the motion to suppress, where the BOLO was too general, Sapp did not exhibit any suspicious behavior before the stop, and the trial court acknowledged that "probably a hundred cars” met the generic description and contained two black males driving in the vicinity 2-1/2 to 3-1/2 hours after the reported crime); L.T.S. v. State, 391 So.2d 695 (Fla. 1st DCA 1980) (finding no objective, articulable basis to suspect criminal activity, where the midnight BOLO lacked specificity and the State presented no evidence concerning other relevant factors such as the level of traffic on the road at that hour, or the existence of other possible escape routes).