VILLANTI, Judge,
Concurring in part and dissenting in part.
I fully concur in the majority’s decision to reverse the summary denial of Toye’s motion for postconviction relief based on the retroactivity of Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and to remand for resentencing. However, I disagree with the majority’s decision to refuse to provide any guidance to the postconviction court concerning the sentencing options available to it on remand. While “[pjrudenee dictates that issues such as the constitutionality of a statute’s application to specific facts should normally be considered at the trial level[,] ... [o]nce this Court has jurisdiction, ... it may, at its discretion, consider any issue affecting the case.” Cantor v. Davis, 489 So.2d 18, 20 (Fla.1986). Hence, in my view, this court should address the issue and specifically should utilize the doctrine of statutory revival to authorize the post-conviction court to impose a legal sentence on Toye pursuant to the 1993 version of section 775.082(1).
*548 No one disagrees that the effect of the decisions in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and Miller is to invalidate the current version of section 775.082(1). The majority believes that the parties should be permitted to explore the sentencing possibilities on remand and make arguments to the court concerning the range of available sentencing options. However, the simple fact is that given the unconstitutionality of section 775.082(1), a statutory gap now exists under which there is no legal sentence available to the sentencing court for a juvenile convicted of a homicide offense. Hence, while the postconviction court will certainly hold the required Miller hearing at which the parties will argue their respective positions concerning the appropriate sentence for Toye, the hearing will in fact be an entirely Sisyphean endeavor because there is simply no legal sentence that can be imposed at its conclusion. I believe that putting the postconviction court in such a rudderless position is, at best, improvident. Pragmatically speaking, rather than remanding for an illusory resentencing hearing, this court should exercise its discretion and apply the doctrine of statutory revival to fill the untenable gap that has arisen in the wake of the Miller decision.[7]
Under the doctrine of statutory revival, “when the judicial branch invalidates an act of the legislature, the prior statute is brought back to life to avoid an unintended gap in the law.” Partlow v. State, 134 So.3d 1027, 1033, 2013 WL 45743 (Fla. 1st DCA Jan. 4, 2013) (Makar, J., concurring in part and dissenting in part). Hence, rather than having courts essentially legislate from the bench by creating a new statutory scheme out of whole cloth, “we simply revert to a solution that was duly adopted by the legislature itself.” Horsley v. State, 121 So.3d 1130, 1132 (Fla. 5th DCA), review granted, 2013 WL 6224657 (Fla. Nov. 14, 2013). This is not an unprecedented act. See, e.g., B.H. v. State, 645 So.2d 987, 995 (Fla.1994) (“Florida law has long held that, when the legislature approves unconstitutional statutory language and simultaneously repeals its predecessor, then the judicial act of striking the new statutory language automatically revives the predecessor unless it, too, would be unconstitutional.”); Smith v. Smathers, 372 So.2d 427, 429 (Fla.1979) (explaining in the context of an election law that the “repealed sections of the statute are hereby revived and shall remain in force and effect to provide a procedure for write-in candidacies in future elections until properly changed by the legislature”). Because statutory revival requires the court to apply a previously duly enacted statute, it respects the legislature’s authority to prescribe criminal penalties and is the antithesis of judicial activism.
Reviving the last constitutional version of the statute would fill the Miller gap and provide the postconviction court with the legal authority to exercise the sentencing discretion that the Miller Court clearly envisioned would be afforded to juvenile homicide defendants until such time as a legal statute is properly enacted by the legislature. And, like the Fifth District in Horsley and Judge Makar’s concurring *549 opinion in Partlow, I would certify the following question to the supreme court:
WHETHER THE SUPREME COURT’S DECISION IN MILLER V. ALABAMA, — U.S. -, 132 S.Ct. 2455, 188 L.Ed.2d 407 (2012), WHICH INVALIDATED SECTION 775.082(1)’S MANDATORY IMPOSITION OF LIFE WITHOUT PAROLE SENTENCES FOR JUVENILES CONVICTED OF FIRST-DEGREE MURDER, OPERATES TO REVIVE THE PRIOR SENTENCE OF LIFE WITH PAROLE ELIGIBILITY AFTER 25 YEARS PREVIOUSLY CONTAINED IN THAT STATUTE? ALTENBERND, Judge, Concurring.
I concur in our decision to give Ashley M. Toye retroactive relief from her life sentence without possibility of parole. I comment that I am not entirely convinced that this case is a “homicide” case governed by Miller rather than a “non-homicide” case governed by Graham. Relying on the briefs in Ms. Toye’s direct appeal to this court, it appears that she was a principal to a felony murder and not the person who actually killed the victim. The facts in this case are horrific, but it is not clear to me that the United States Supreme Court has decided whether principals to felony murder fall within the purview of the Graham holding or the Miller holding. See generally Arrington v. State, 113 So.3d 20 (Fla. 2d DCA 2012).
Judge Villanti in this case, and Judge Makar in his dissent in Partlow v. State, 134 So.3d 1027, 2013 WL 45743 (Fla. 1st DCA Jan. 4, 2013), both present a reasonable argument for application of the doctrine of statutory revival on remand for resentencing. If a statute has been amended in an unconstitutional manner, returning to the last properly enacted statute to assure that a statute exists for application to all persons makes sense to me. I am less convinced, however, that it is a good idea or even permissible to revive a statute for application to a very small population of persons for whom the existing statute is essentially unconstitutional as applied. I do not join in Judge Villan-ti’s proposed certified question but only because I believe that the parties should have an opportunity to conduct a resen-tencing hearing at which that issue can be fully explored before the issue is sent to the supreme court.
Given the very difficult and time-consuming legal issues that have arisen since the decisions were announced in Graham and Miller — not only in the several hundred earlier cases but also in all similar pending and future cases-a prospective statute allowing for life with the possibility of parole for defendants under the age of eighteen and maybe even under the age of twenty-one or twenty-four would be a cost-effective solution in Florida that would allow for long but measured sentences for young persons who commit serious crimes, in part, because of their immaturity. If prisoners who received life sentences without possibility of parole in the past for crimes committed during their minority were permitted by statute to elect resen-tencing under the new law, we could quickly address the 300 or so cases that are currently creating a constitutional quagmire in Florida.
The Florida Legislature should understand that there is at least a small risk, especially for new offenses controlled by Graham and Miller, that a court would conclude that no statutory provision for punishment exists for this small group of defendants. If that is the case, then they either cannot receive a sentence or the sentence cannot exceed one year in prison. This state has long had a statute that provides:
*550 When there exists no such provision by statute, the court shall proceed to punish such offense by fine or imprisonment, but the fíne shall not exceed $500, nor the imprisonment 12 months.
§ 775.02, Fla. Stat. (2013).
There is little case law addressing this statute. The First District has held that it applies only to common law crimes. See Holmes v. State, 342 So.2d 134, 135 (Fla. 1st DCA 1977), receded, from on other grounds by Stanfill v. State, 360 So.2d 128 (Fla. 1st DCA 1978). The offenses involved in the Graham and Miller cases are not common law crimes. However, in so holding, the court in Holmes concluded that no punishment existed for a statutory crime for which the legislature had provided no penalty. The supreme court has never determined whether section 775.02 applies only to common law crimes. The title to the section suggests this is the case, but the body of the statute does not state this directly and, strictly construed, it might apply in this instance.[8] See § 775.021(1), Fla. Stat. (2013). The Florida Legislature could eliminate this risk if it addresses this sentencing issue during the next session.

. I would also note that, even when the legislature does act on this issue, "it faces hurdles including the state constitutional constraint that the ‘[rjepeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.’ ” Partlow v. State, 134 So.3d 1027, 1032, 2013 WL 45743, n. 7 (Fla. 1st DCA Jan. 4, 2013) (Makar, J., concurring in part and dissenting in part) (quoting Art. X, § 9, Fla. Const.). Thus, even if the legislature enacts a new sentencing statute this term, such statute will not fill the gap created by Miller.

. In earlier codifications, it appears that the context of what is now section 775.02 was immediately preceded by the statutory provision that is now found at section 775.01. See § 775.01; Hepburn v. Chapman, 109 Fla. 133, 149 So. 196, 203 (1933). Section 775.01 states: "The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject.” Sections 775.01 and 775.02 are now separated by other statutory provisions. But when the two sections are read back to back, the words "no such provision” in section 775.02 appear to refer to common law crimes for which there are no existing provisions by statute.