# Supreme Court of Florida

_____

No. SC13-1938
_____

**ANTHONY DUWAYNE HORSLEY, JR.,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

_____

No. SC13-2000
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**ANTHONY DUWAYNE HORSLEY, JR.,**
Respondent.

[March 19, 2015]

PARIENTE, J.

In Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012), the United States

Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that

mandates life in prison without possibility of parole for juvenile offenders." The

juvenile offender in this post-Miller case, Anthony Duwayne Horsley, Jr., was sentenced to a mandatory term of life in prison without the possibility of parole, under a sentencing scheme that precluded individualized sentencing consideration for homicide offenders. Therefore, under Miller, that sentence is clearly unconstitutional as applied to him.[1] The question we consider, which the Fifth District Court of Appeal certified to be of great public importance, is what remedy applies for Horsley and other juvenile offenders whose sentences now violate the Eighth Amendment based on Miller.[2]

Responding to Miller and its predecessor, Graham v. Florida, 560 U.S. 48, 75 (2010), which categorically invalidated life without parole sentences for juveniles convicted of nonhomicide offenses and held that those offenders must be provided a meaningful opportunity to obtain release, the Florida Legislature unanimously enacted legislation in 2014 designed to bring Florida's juvenile

---

1. The State does not contest that the mandatory life sentence without the possibility of parole Horsley received pursuant to the sentencing scheme in effect at the time of his homicide offense is unconstitutional as applied. Since Horsley's conviction and sentence were not yet final when Miller was decided, there is also no dispute in this case that Horsley is entitled to the benefit of the Miller decision. See Hughes v. State, 901 So. 2d 837, 839 (Fla. 2005). In any event, this Court has determined that Miller applies retroactively and that the same remedy should be provided to any juvenile offender whose sentence is now unconstitutional under Miller. See Falcon v. State, No. SC13-865, slip op. at 3-4 (Fla. Mar. 19, 2015).

2. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

- 2 -

sentencing statutes into compliance with the United States Supreme Court's recent Eighth Amendment juvenile sentencing jurisprudence. See ch. 2014-220, Laws of Fla. This legislation, however, provided an effective date of July 1, 2014, leaving open the question of the proper remedy for those juvenile offenders, such as Horsley, whose sentences for crimes committed prior to July 1, 2014, violate Miller.

To give effect to the commandment of the United States Supreme Court in Miller and the unanimous pronouncement of the Florida Legislature as to how to comply with the Miller decision, we conclude that the proper remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under Miller. Our conclusion is guided by the recent, unequivocal expression of legislative intent in chapter 2014-220, Laws of Florida, which provides for individualized sentencing consideration prior to the imposition of a life sentence on a juvenile offender, and by the fundamental principle of respecting the separation of powers regarding criminal sentencing, including the Legislature's important role in establishing the appropriate sentence for a criminal offense. We are also cognizant of our duty to uphold the federal constitution, as interpreted by the United States Supreme Court.

In reaching this conclusion, we reject the State's argument that the only permissible sentencing options to comply with Miller are life without parole and

life with the possibility of parole after twenty-five years, through the "revival" of a twenty-year-old sentencing statute. We conclude that statutory revival is an inappropriate remedy in this context. The purpose of a court applying the principle of statutory revival to cure a constitutional infirmity in a statute is to effectuate legislative intent and avoid judicial rewriting of the statute. But we now know how the Legislature has cured the federal constitutional infirmity in Florida's juvenile sentencing statutes, providing for individualized consideration prior to the imposition of a life sentence and affording most juvenile offenders an opportunity to obtain future release.

Applying statutory revival here, with parole eligibility as the linchpin to conforming to Miller, would thus be patently inconsistent with the legislative intent as to the appropriate remedy. It would also require this Court to revive parole for this subset of juvenile offenders, and through its elimination of parole in this state over the past twenty years, the Legislature has made its intent clear that parole is no longer a viable option.

Accordingly, presented with this unique situation in which a federal constitutional infirmity in a sentencing statute has now been specifically remedied by our Legislature, we conclude that the proper remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional in light of Miller. We therefore answer the Fifth District's

certified question regarding statutory revival in the negative, quash the underlying

decision that adopted statutory revival as the remedy, and remand this case for

resentencing in conformance with chapter 2014-220, Laws of Florida, which has

been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes.

## BACKGROUND

Anthony Duwayne Horsley, Jr., was seventeen years old in June 2006 when

he participated in the robbery of a convenience store in Palm Bay, Florida, during

which one of the owners was shot in the chest and killed. After a trial in late 2011,

less than a year before the United States Supreme Court decided Miller, the jury

convicted Horsley of first-degree felony murder, robbery with a firearm while

inflicting death, and two counts of aggravated assault with a firearm, specifically

finding that Horsley possessed and discharged a firearm in the robbery. Based on

the sentencing scheme then in effect, Horsley was sentenced to life imprisonment

without the possibility of parole for the murder,[3] thirty years with a twenty-five

---

3. The version of the pertinent statute in effect at the time provided as follows:

> A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.

year mandatory-minimum term of imprisonment for the robbery, and five years' imprisonment for each of the aggravated assaults.

While his direct appeal of his convictions and sentences was pending in the Fifth District, the United States Supreme Court decided <u>Miller</u>. Thereafter, Horsley filed a motion to correct his sentence, asserting that Florida's statutory sentencing scheme, which required the trial court to sentence Horsley to life in prison without the possibility of parole for the first-degree murder conviction, was unconstitutional as applied to juveniles because the trial court had "no discretion to consider a juvenile's lessened culpability and greater capacity for change," as required by <u>Miller</u>.

At a hearing in the trial court on Horsley's motion, the State acknowledged that Horsley was entitled to a resentencing under <u>Miller</u> and stated that the hearing on the motion was his opportunity "to present anything [the defense] wish[ed] to present." The State argued that <u>Miller</u> "did not prohibit, as a categorical bar, a life sentence, without the possibility of parole, to a juvenile offender, convicted of first-degree murder." According to the State, <u>Miller</u> stands for the proposition that

---

§ 775.082(1), Fla. Stat. (2006) (emphasis added). This language, which made the sentence for first-degree murder a mandatory sentence of life imprisonment without the possibility of parole for a juvenile offender who is ineligible for the death penalty, was included in section 775.082(1) from May 25, 1994 until July 1, 2014.

a trial court "has to have some discretion to be able to examine the background, the facts, and the circumstances, the age of the Defendant, the background of the Defendant, anything that's relevant, to make a determination about whether or not a life sentence, without a possibility of parole, is the appropriate sentence, or some other sentence, i.e., the only other one that's ever been authorized in Florida, would be a life with possibility of parole after 25 years."[4]

The trial court agreed that Horsley was entitled to be resentenced with individualized consideration based on Miller, but rejected the argument that it had the discretion to consider a term of years as a sentencing option. Rather, the trial court agreed with the State that it was constrained to only two options for resentencing Horsley: (1) life without parole; or (2) life with parole eligibility after twenty-five years under the State's theory of statutory revival.[5] After hearing legal

_____

4. The prior, pre-1994 statute referenced by the State that provided for parole eligibility stated as follows:

> A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than twenty-five years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in section 921.141 results in findings by the court that such person shall be punished by death, and in the latter event such person shall be punished by death.

Ch. 94-228, § 1, Laws of Fla. (effective until May 25, 1994) (emphasis added).

5. The State's theory of statutory revival is slightly different than the approach adopted by the Fifth District. Under the Fifth District's approach, life

argument from both parties and testimony from Horsley regarding his troubled upbringing, the trial court once again sentenced Horsley to life imprisonment without the possibility of parole, stating that Horsley "could be the definition of irreparable corruption, as referenced in Miller," regarding the very rare circumstances under which a life without parole sentence may be appropriate, after individualized consideration, for a juvenile offender in a homicide case. See Miller, 132 S. Ct. at 2469 (stating that it would be only the "rare juvenile offender whose crime reflects irreparable corruption" that would be subject to the "uncommon" sentence of life imprisonment without the possibility of parole).

Horsley appealed to the Fifth District, arguing that "the trial court erred by rejecting the idea that it had discretion under Miller v. Alabama, 132 S. Ct. 2455 (2012), to sentence him to a term of years." Horsley, 121 So. 3d at 1131. The Fifth District rejected this argument, but nevertheless vacated Horsley's sentence of life without the possibility of parole because it concluded that this sentence is no longer a viable option in Florida. Id. "Applying the principle of statutory revival," the Fifth District held that "the only sentence now available in Florida for a charge

_____

with parole eligibility after twenty-five years, under the "revived" pre-1994 statute, is the only available sentence. While the State agrees that revival of the pre-1994 statute providing for parole eligibility is the remedy to comply with Miller, the State maintains that life without parole is still an option for trial courts to consider, and only if life without parole is determined to be inappropriate is life with parole after twenty-five years the appropriate sentence.

of capital murder committed by a juvenile is life with the possibility of parole after twenty-five years." Id.

Recognizing the importance of this issue and the split of authority in the district courts as to how to comply with Miller, the Fifth District certified the following question for this Court's review:

> WHETHER THE SUPREME COURT'S DECISION IN MILLER V. ALABAMA, 132 S. CT. 2455 (2012), WHICH INVALIDATED SECTION 775.082(1)'S MANDATORY IMPOSITION OF LIFE WITHOUT PAROLE SENTENCES FOR JUVENILES CONVICTED OF FIRST-DEGREE MURDER, OPERATES TO REVIVE THE PRIOR SENTENCE OF LIFE WITH PAROLE ELIGIBILITY AFTER 25 YEARS PREVIOUSLY CONTAINED IN THAT STATUTE?

Id. at 1132-33.

After we accepted jurisdiction and the parties filed their briefs, the Florida Legislature passed, and the Governor subsequently signed into law, new juvenile sentencing legislation aimed at addressing Miller and the related case of Graham, 560 U.S. 48. See ch. 2014-220, Laws of Fla. We ordered supplemental briefing for the parties to address the impact of this legislation, and now consider the question of remedy with the benefit of the Legislature's unanimous view as to how to comply with Miller.

## ANALYSIS

The issue in this case involves the appropriate remedy for juvenile offenders whose sentences are now unconstitutional in light of Miller. We begin our analysis

by reviewing the United States Supreme Court's recent juvenile sentencing cases of <u>Miller</u> and <u>Graham</u>, which form the basis for the issue currently before us. Then, we turn to how <u>Miller</u> has been applied in Florida's district courts of appeal. With this context established, and after reviewing the pertinent provisions of the new legislation, we address the remedies that have been suggested in this case and in various district court decisions and explain why application of the new legislation is the proper approach. Finally, we consider how the remedy we adopt applies in this case.

## I. The Supreme Court's Juvenile Sentencing Jurisprudence

Over the past decade, the United States Supreme Court has issued a line of decisions establishing the legal principle that juveniles "are constitutionally different from adults for purposes of sentencing." <u>Miller</u>, 132 S. Ct. at 2464. The Supreme Court's emphasis on juvenile offenders' "diminished culpability and greater prospects for reform" was first enunciated in <u>Roper v. Simmons</u>, 543 U.S. 551, 568 (2005), in which the Supreme Court held that the Eighth Amendment prohibits the death penalty for juveniles. <u>See</u> <u>Miller</u>, 132 S. Ct. at 2463.

Then, five years later, in <u>Graham</u>, 560 U.S. at 52, the Supreme Court considered "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." In short, the Supreme Court concluded that the answer is no, holding "that for a juvenile offender who

did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Id. at 74. In so doing, the Supreme Court established a "clear line" that "is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment." Id.

While this case involves a homicide rather than a nonhomicide offense, Graham is instructive because, as the Supreme Court acknowledged two years later in Miller, Graham stands for the proposition that the Eighth Amendment prohibits certain punishments without "considering a juvenile's 'lessened culpability' and greater 'capacity for change.' " Miller, 132 S. Ct. at 2460 (quoting Graham, 560 U.S. at 68, 74). Graham does not require a State to "guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," but it does "forbid States from making the judgment at the outset that those offenders never will be fit to reenter society." Graham, 560 U.S. at 75. "What the State must do . . . is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. As Graham stressed, "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole" because "the characteristics of youth" serve to "weaken rationales for punishment." Miller, 132 S. Ct. at 2465-66; see Graham, 560 U.S. at 71-74.

- 11 -

Resting on the principles explicated in Graham, as well as those explained in another line of Supreme Court precedent "demanding individualized sentencing when imposing the death penalty," the Supreme Court held in Miller that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Miller, 132 S. Ct. at 2467, 2469. Although declining to address the "alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles," the Supreme Court stated that "given all [it has] said in Roper, Graham, and [Miller] about children's diminished culpability and heightened capacity for change," it is clear that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." Id. at 2469. Indeed, it would be only the "rare" juvenile offender "whose crime reflects irreparable corruption" that would be subject to the "uncommon" sentence of life imprisonment without the possibility of parole. Id.

The Supreme Court in Miller did "not foreclose a sentencer's ability to make that judgment in homicide cases," but did "require [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," explicitly noting that its holding "requires factfinders . . . to take into account the differences among defendants and crimes." Id. at 2469 & n.8. Proceeding to reject "two kinds of

arguments against requiring individualized consideration before sentencing a juvenile to life imprisonment without possibility of parole," the Supreme Court explained that its decision mandates that a sentencer consider an offender's "youth and attendant characteristics" before "imposing a particular penalty." Id. at 2469, 2471.

Taken together, Graham and Miller establish that "children are different"; that "youth matters for purposes of meting out the law's most serious punishments"; and that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id. at 2470, 2471, 2475. Under Miller, a "mandatory sentencing scheme[]" that requires life imprisonment without the possibility of parole for a juvenile offender—as did the version of section 775.082(1), Florida Statutes, in effect from May 25, 1994 until July 1, 2014—violates the Eighth Amendment. Miller, 132 S. Ct. at 2475.

The State does not dispute that the prior version of section 775.082(1) is unconstitutional as applied to juvenile offenders under Miller, because it provided for a mandatory sentence of life imprisonment without the possibility of parole for a juvenile convicted of a capital homicide offense and did not allow for any judicial discretion or individualized sentencing determination. See Toye v. State, 133 So. 3d 540, 548 (Fla. 2d DCA 2014) (Villanti, J., concurring in part and

dissenting in part) ("No one disagrees that the effect of the decisions in <u>Roper v.</u> <u>Simmons</u>, 543 U.S. 551 (2005), and <u>Miller</u> is to invalidate the current version of section 775.082(1).").  What has garnered significant disagreement between the State, defendants, and even Florida's district courts of appeal is how to remedy this federal constitutional infirmity for those juvenile offenders whose sentences are now unconstitutional, under <u>Miller</u>, in violation of the Eighth Amendment.

## II.  Post-<u>Miller</u> in Florida

### A.  District Court of Appeal Decisions

Since <u>Miller</u> was decided, Florida's district courts have uniformly observed that <u>Miller</u> "opened a breach in Florida's sentencing statutes."  <u>Hernandez v. State</u>, 117 So. 3d 778, 783 (Fla. 3d DCA 2013).  However, in general, the district courts have adopted a "measured approach" to crafting an appropriate remedy.  <u>Id.</u> at 784.

Most district courts have chosen to simply remand cases implicating <u>Miller</u> for resentencing, without providing any specific guidance or definitive direction to trial courts regarding the available sentencing alternatives.  <u>See, e.g.</u>, <u>Neely v.</u> <u>State</u>, 126 So. 3d 342, 348 (Fla. 3d DCA 2013) (remanding for resentencing so that the trial court could conduct an individualized examination of mitigating circumstances in considering the fairness of imposing a life sentence without parole); <u>Washington v. State</u>, 103 So. 3d 917, 920 (Fla. 1st DCA 2012) (noting that "if the state again seeks imposition of a life sentence without the possibility of

parole, the trial court must conduct an individualized examination of mitigating circumstances in considering the fairness of imposing such a sentence"; that a "discourse" regarding the available resentencing options was "premature"; and that the court would "exercise restraint" in considering the remedy).

Two specific approaches to the issue of remedy have, however, been suggested by several district court judges. The first is the "statutory revival" approach, initially articulated by Judge Makar's separate opinion in Partlow v. State, 134 So. 3d 1027 (Fla. 1st DCA 2013), in which he supported the revival of the pre-1994 sentencing statute providing a mandatory sentence of life with the possibility of parole after twenty-five years for any juvenile offender whose sentence is now unconstitutional under Miller. Id. at 1032 (Makar, J., concurring in part and dissenting in part). The Fifth District, in Horsley, fully adopted Judge Makar's statutory revival approach and held, in certifying the question to this Court, that "the only sentence now available in Florida for a charge of capital murder committed by a juvenile is life with the possibility of parole after twenty-five years." Horsley, 121 So. 3d at 1131. In addition, other courts and judges have cited favorably to the statutory revival option. See Rodriguez-Giudicelli v. State, 143 So. 3d 947, 948 (Fla. 2d DCA 2014) (holding that "the trial court did not err when it applied the doctrine of statutory revival to sentence Rodriguez-Giudicelli pursuant to the 1993 version of section 775.082(1) for a premeditated murder

committed when he was a minor"); Toye, 133 So. 3d at 547 (Villanti, J., concurring in part and dissenting in part) (disagreeing with "the majority's decision to refuse to provide any guidance to the postconviction court concerning the sentencing options available to it on remand" and stating that "this court should address the issue and specifically should utilize the doctrine of statutory revival to authorize the postconviction court to impose a legal sentence on Toye pursuant to the 1993 version of section 775.082(1)").

The second approach regarding the appropriate remedy allows for "a sentence of a term of years without possibility of parole," which Judge Wolf's separate opinion in Washington considered to be the only option that "gives the trial court the discretion mandated by Miller." Washington, 103 So. 3d at 921-22 (Wolf, J., concurring). Judge Wolf explained that "the only sentencing alternative specifically authorized by the Legislature, a mandatory life sentence without possibility of parole, is unconstitutional" under Miller and the trial court therefore "must have the discretion to impose an alternate sentence based on the facts of an individual case." Id. at 920.

This general approach that would permit trial courts to sentence juvenile homicide offenders to a term of years up to and including life imprisonment has been embraced in two other separate opinions. See Walling v. State, 105 So. 3d 660, 664 (Fla. 1st DCA 2013) (Wright, Associate Judge, concurring) (relying on

- 16 -

"Miller's emphasis on the availability of discretion by the trial judge" in asserting that a judge "who encounters a Miller sentencing or resentencing should conduct a separate hearing before sentencing, allow presentations by the State and the defense, and then decide if a life without parole sentence is indicated" in consideration of "the teaching in Miller"); see also Thomas v. State, 135 So. 3d 590, 591 (Fla. 1st DCA 2014) (Osterhaus, J., specially concurring) (explaining his view that "the trial judge's decision to resentence the juvenile defendant in this case to forty years without parole on the murder charge finds express statutory support in Florida's sentencing statute" because the defendant could be sentenced as a "life" felon under section 775.082(3)(a)3. since homicide committed by a juvenile is punishable by a maximum term of imprisonment for life).

While no consensus has been reached, the district courts have thoughtfully considered this issue, and, at the time of these opinions, did not have the benefit, as we now do, of the Legislature's directive as to how to comply with Miller. During the 2014 Regular Session, however, the Florida Legislature changed the legal landscape by enacting juvenile sentencing legislation to remedy the federal constitutional infirmities in Florida's juvenile sentencing laws, as identified by the Supreme Court in Miller and Graham.

**B. Chapter 2014-220, Laws of Florida**

The substantive provisions of chapter 2014-220, Laws of Florida, that are of importance to the issue currently before this Court are set forth in sections one, two, and three of the legislation, which have been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes.  Section one provides the new statutory penalties for juvenile offenders; section two sets forth the procedures for the mandatory individualized sentencing hearing that is now required before sentencing a juvenile to life imprisonment; and section three relates to subsequent judicial review of a juvenile offender's sentence.

As to those juvenile offenders convicted of a capital homicide offense, such as the first-degree murder conviction at issue in this case, chapter 2014-220, Laws of Florida, provides in pertinent part as follows:

> [Section 1]  (b) 1.  A person who actually killed, intended to kill, or attempted to kill the victim and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age shall be punished by a term of imprisonment for life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401 [established in section 2 of the new legislation], the court finds that life imprisonment is an appropriate sentence.  If the court finds that life imprisonment is not an appropriate sentence, such person shall be punished by a term of imprisonment of at least 40 years.  A person sentenced pursuant to this subparagraph is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(a) [established in section 3 of the new legislation].
>
> 2.  A person who did not actually kill, intend to kill, or attempt to kill the victim and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age may be

punished by a term of imprisonment for life or by a term of years equal to life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence.  A person who is sentenced to a term of imprisonment of more than 15 years is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(c).

3.  The court shall make a written finding as to whether a person is eligible for a sentence review hearing under s. 921.1402(2)(a) or (2)(c).  Such a finding shall be based upon whether the person actually killed, intended to kill, or attempted to kill the victim.  The court may find that multiple defendants killed, intended to kill, or attempted to kill the victim.

. . . .

[Section 2]  921.1401—Sentence of life imprisonment for persons who are under the age of 18 years at the time of the offense; sentencing proceedings.—

(1)  Upon conviction or adjudication of guilt of an offense described in s. 775.082(1)(b), s. 775.082(3)(a)5., s. 775.082(3)(b)2., or s. 775.082(3)(c) which was committed on or after July 1, 2014, the court may conduct a separate sentencing hearing to determine if a term of imprisonment for life or a term of years equal to life imprisonment is an appropriate sentence.

(2)  In determining whether life imprisonment or a term of years equal to life imprisonment is an appropriate sentence, the court shall consider factors relevant to the offense and the defendant's youth and attendant circumstances, including, but not limited to:

(a)  The nature and circumstances of the offense committed by the defendant.

(b)  The effect of the crime on the victim's family and on the community.

(c)  The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.

(d)  The defendant's background, including his or her family, home, and community environment.

(e)  The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.

(f)  The extent of the defendant's participation in the offense.

(g)  The effect, if any, of familial pressure or peer pressure on the defendant's actions.

(h)  The nature and extent of the defendant's prior criminal history.

(i)  The effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment.

(j)  The possibility of rehabilitating the defendant.

. . . .

[Section 3]  921.1402—Review of sentences for persons convicted of specified offenses committed while under the age of 18 years.—

(1)  For purposes of this section, the term "juvenile offender" means a person sentenced to imprisonment in the custody of the Department of Corrections for an offense committed on or after July 1, 2014, and committed before he or she attained 18 years of age.

(2)(a)  A juvenile offender sentenced under s. 775.082(1)(b)1. is entitled to a review of his or her sentence after 25 years.  However, a juvenile offender is not entitled to review if he or she has previously been convicted of one of the following offenses, or conspiracy to commit one of the following offenses, if the offense for which the person was previously convicted was part of a separate criminal transaction or episode than that which resulted in the sentence under s. 775.082(1)(b)1.:

1.  Murder;

- 20 -

2. Manslaughter;

3. Sexual battery;

4. Armed burglary;

5. Armed robbery;

6. Armed carjacking;

7. Home-invasion robbery;

8. Human trafficking for commercial sexual activity with a child under 18 years of age;

9. False imprisonment under s. 787.02(3)(a); or

10. Kidnapping.

(b) A juvenile offender sentenced to a term of more than 25 years under s. 775.082(3)(a)5.a. or s. 775.082(3)(b)2.a. is entitled to a review of his or her sentence after 25 years.

(c) A juvenile offender sentenced to a term of more than 15 years under s. 775.082(1)(b)2., s. 775.082(3)(a)5.b., or s. 775.082(3)(b)2.b. is entitled to a review of his or her sentence after 15 years.

. . . .

(3) The Department of Corrections shall notify a juvenile offender of his or her eligibility to request a sentence review hearing 18 months before the juvenile offender is entitled to a sentence review hearing under this section.

(4) A juvenile offender seeking sentence review pursuant to subsection (2) must submit an application to the court of original jurisdiction requesting that a sentence review hearing be held. The juvenile offender must submit a new application to the court of original jurisdiction to request subsequent sentence review hearings pursuant to paragraph (2)(d) [which applies only to certain nonhomicide offenses]. The sentencing court shall retain original jurisdiction for the duration of the sentence for this purpose.

(5)  A juvenile offender who is eligible for a sentence review hearing under this section is entitled to be represented by counsel, and the court shall appoint a public defender to represent the juvenile offender if the juvenile offender cannot afford an attorney.

(6)  Upon receiving an application from an eligible juvenile offender, the court of original sentencing jurisdiction shall hold a sentence review hearing to determine whether the juvenile offender's sentence should be modified.  When determining if it is appropriate to modify the juvenile offender's sentence, the court shall consider any factor it deems appropriate, including all of the following:

(a)  Whether the juvenile offender demonstrates maturity and rehabilitation.

(b)  Whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing.

(c)  The opinion of the victim or the victim's next of kin.  The absence of the victim or the victim's next of kin from the sentence review hearing may not be a factor in the determination of the court under this section.  The court shall permit the victim or victim's next of kin to be heard, in person, in writing, or by electronic means.  If the victim or the victim's next of kin chooses not to participate in the hearing, the court may consider previous statements made by the victim or the victim's next of kin during the trial, initial sentencing phase, or subsequent sentencing review hearings.

(d)  Whether the juvenile offender was a relatively minor participant in the criminal offense or acted under extreme duress or the domination of another person.

(e)  Whether the juvenile offender has shown sincere and sustained remorse for the criminal offense.

(f)  Whether the juvenile offender's age, maturity, and psychological development at the time of the offense affected his or her behavior.

(g)  Whether the juvenile offender has successfully obtained a general educational development certificate or completed another educational, technical, work, vocational, or self-rehabilitation program, if such a program is available.

(h)  Whether the juvenile offender was a victim of sexual, physical, or emotional abuse before he or she committed the offense.

(i)  The results of any mental health assessment, risk assessment, or evaluation of the juvenile offender as to rehabilitation.

(7)  If the court determines at a sentence review hearing that the juvenile offender has been rehabilitated and is reasonably believed to be fit to reenter society, the court shall modify the sentence and impose a term of probation of at least 5 years.  If the court determines that the juvenile offender has not demonstrated rehabilitation or is not fit to reenter society, the court shall issue a written order stating the reasons why the sentence is not being modified.

Ch. 2014-220, §§ 1-3, Laws of Fla.

Under the provisions of chapter 2014-220, Laws of Florida, a juvenile convicted of a capital homicide offense who "actually killed, intended to kill, or attempted to kill the victim" must receive an individualized sentencing hearing and must receive a life sentence if the trial court determines that a life sentence is appropriate after considering various age-related factors.  Ch. 2014-220, § 1, Laws of Fla.  If the trial court determines that a life sentence is not warranted, the trial court must impose a term-of-years sentence of at least forty years' imprisonment. Id.  However, a subsequent judicial review of the sentence is available after twenty-five years, as long as the juvenile offender was not previously convicted of

an enumerated felony, from section three of the legislation, that arose out of a separate criminal transaction or episode. Ch. 2014-220, §§ 1, 3, Laws of Fla. Only one subsequent review of the sentence is provided for juvenile offenders in this category.

For those juveniles convicted of a capital homicide offense who "did not actually kill, intend to kill, or attempt to kill the victim," a life sentence may be imposed if the trial court conducts an individualized sentencing hearing and finds that life imprisonment is an appropriate sentence. Ch. 2014-220, § 1, Laws of Fla. Any juvenile offender in this category who is sentenced to more than fifteen years' imprisonment is entitled to a review of his or her sentence after fifteen years. Ch. 2014-220, §§ 1, 3, Laws of Fla. Only one subsequent review of the sentence is provided.

A similar sentencing structure applies to those juvenile offenders convicted of life or first-degree felony homicide offenses. Life imprisonment remains a possibility if the trial court conducts an individualized sentencing proceeding, with mandatory subsequent judicial review available for those juvenile offenders who "actually killed, intended to kill, or attempted to kill" that are sentenced to a term of imprisonment of more than twenty-five years. Id. For those offenders in this category who "did not actually kill, intend to kill, or attempt to kill," the

subsequent judicial review is available for a sentence of more than fifteen years. Id.

Juveniles convicted of nonhomicide offenses, thereby implicating Graham rather than Miller, also may be sentenced to life imprisonment if the trial court, after considering the specified factors during an individualized sentencing hearing, determines that a life sentence is appropriate. Ch. 2014-220, § 1, Laws of Fla. Those juvenile offenders sentenced to a term of imprisonment of more than twenty years for a nonhomicide offense are entitled to subsequent judicial review of their sentences. Ch. 2014-220, §§ 1, 3, Laws of Fla. This class of nonhomicide offenders is also eligible for "one subsequent review hearing 10 years after the initial review hearing," if the juvenile nonhomicide offender is not resentenced at the initial review hearing. Ch. 2014-220, § 3, Laws of Fla. This is the only class of juvenile offenders entitled to more than one subsequent sentence review.

Finally, and significantly for purposes of this case, section eight provides that chapter 2014-220, Laws of Florida, "shall take effect July 1, 2014." Ch. 2014-220, § 8, Laws of Fla. This effective date is critical in evaluating the impact of chapter 2014-220, Laws of Florida, on all of those juvenile offenders whose offenses were committed prior to that date but whose sentences are nevertheless unconstitutional under Miller.

Indeed, although chapter 2014-220, Laws of Florida, addresses the concerns of <u>Miller</u> moving forward, the legislation does not completely foreclose the arguments about the appropriate remedy under <u>Miller</u> because it provides only a prospective effective date. Therefore, it remains our task to determine what remedy should apply to those juveniles whose offenses were committed prior to the legislation's July 1, 2014, effective date, but whose sentences remain unconstitutional under <u>Miller</u>.

### III.  The Appropriate <u>Miller</u> Remedy

The Legislature has now clearly expressed its intent as to how to comply with <u>Miller</u>—providing judicial discretion and term-of-years sentencing options, with the recognition that a juvenile's sentence should be revisited at some later point through subsequent judicial review. In determining the remedy for those juveniles not covered by the express terms of chapter 2014-220, Laws of Florida, this Court is faced with three potential options.

First, we could fashion our own remedy, as was suggested by Judge Wolf in <u>Washington</u>, based solely on the requirements established by the United States Supreme Court in <u>Miller</u>. Although this option would satisfy our duty to give effect to the pronouncements of the United States Supreme Court, it would also require us to ignore the primary role of the Legislature in criminal sentencing by

crafting a remedy without a statutory basis.  Therefore, we conclude that this remedy is inconsistent with our respect for the separation of powers.

Second, we could revive a prior sentencing statute in an attempt to comply with <u>Miller</u>, as embodied in Judge Makar's approach in <u>Partlow</u> and advocated for by the State.  While this approach may have been appealing prior to the enactment of chapter 2014-220, Laws of Florida, because it was the only evidence of legislative intent at that time, the statutory revival approach has now been rendered inconsistent with the legislative intent revealed in chapter 2014-220, Laws of Florida.

Finally, even though the effective date is prospective, we could determine that the appropriate remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under <u>Miller</u>.  For the following reasons, we have determined this to be the best approach—and that we are not precluded from adopting this remedy under these unique circumstances.

### A.  Applying Chapter 2014-220, Laws of Florida

We conclude that applying chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under <u>Miller</u> is the appropriate remedy.  We reach this conclusion for several reasons.

First and foremost, this is the remedy that is most consistent with the legislative intent regarding how to comply with <u>Miller</u>, as it is the remedy the

Legislature itself has specifically adopted. Applying chapter 2014-220, Laws of Florida, does not require this Court to speculate as to what the Legislature would do in response to Miller, nor does it require us to fashion our own remedy out of whole cloth. It respects the separation of powers and acknowledges the Legislature's role in establishing the sentence for criminal offenses.

Applying chapter 2014-220, Laws of Florida, as a remedy is also faithful to Miller. This legislation was enacted in direct response to the Supreme Court's decisions in Miller and Graham, and it appears to be consistent with the principles articulated in those cases—that juveniles are different as a result of their "diminished culpability and heightened capacity for change"; that individualized consideration is required so that a juvenile's sentence is proportionate to the offense and the offender; and that most juveniles should be provided "some meaningful opportunity" for future release from incarceration if they can demonstrate maturity and rehabilitation. See Miller, 132 S. Ct. at 2469.

Indeed, because chapter 2014-220, Laws of Florida, seems to so directly address the remedy, the only justification that has been offered for why this Court should not apply the legislation is that we are prevented from doing so by article X, section 9, of the Florida Constitution, commonly known as the "Savings Clause." Article X, section 9, entitled "Repeal of criminal statutes," provides that the "[r]epeal or amendment of a criminal statute shall not affect prosecution or

- 28 -

punishment for any crime previously committed." Art. X, § 9, Fla. Const. By its terms, article X, section 9, precludes an "amendment of a criminal statute" from applying retroactively. Art. X, § 9, Fla. Const.; see Smiley v. State, 966 So. 2d 330, 336 (Fla. 2007). This state constitutional "hurdle[]" to effectuating a "legislative solution" to the remedy issue has been recognized in the district courts. Partlow, 134 So. 3d at 1032 n.7 (Makar, J., concurring in part and dissenting in part); see also Toye, 133 So. 3d at 548 n.7 (Villanti, J., concurring in part and dissenting in part) ("[E]ven if the legislature enacts a new sentencing statute this term, such statute will not fill the gap created by Miller.").

Yet, in this unique context, we conclude that the "Savings Clause" is no "hurdle[]" at all. As this Court has previously acknowledged, the purpose of the "Savings Clause" is to require the statute in effect at the time of the crime to govern the sentence an offender receives for the commission of that crime. See Castle v. State, 330 So. 2d 10, 11 (Fla. 1976). Here, however, the statute in effect at the time of the crime is unconstitutional under Miller and the federal constitution, so it cannot, in any event, be enforced. The "Savings Clause" therefore does not apply.

Even if this state constitutional provision were to apply, though, the requirements of the federal constitution must trump those of our state constitution. See U.S. Const. art. VI, cl. 2. In other words, fashioning a remedy that complies

with the Eighth Amendment must take precedence over a state constitutional provision that would prevent this Court from effectuating that remedy. The "Savings Clause" thus does not preclude the application of chapter 2014-220, Laws of Florida, under these unique circumstances.

In sum, applying chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under Miller is the remedy most faithful to the Eighth Amendment principles established by the United States Supreme Court, to the intent of the Florida Legislature, and to the doctrine of separation of powers. Accordingly, this is the remedy we adopt.

## B. Rejecting Statutory Revival

We also explain why we reject the State's proposed remedy, and the remedy suggested in several district court opinions, of statutory revival. The linchpin of the statutory revival approach is providing juvenile offenders with parole eligibility. See Partlow, 134 So. 3d at 1032 (Makar, J., concurring in part and dissenting in part) ("The State of Florida unequivocally advocates that only one constitutional sentencing option exists: revival of the 1993 version of section 775.082(1), Florida Statutes, which imposes a life sentence with the possibility of parole after 25 years."). We conclude that this approach now misses the mark for several reasons.

First, the Legislature has consistently demonstrated its opposition to parole, abolishing this practice for non-capital felonies in 1983, for first-degree murder in 1994, for all capital felonies in 1995, and for any sentence imposed under the Criminal Punishment Code in 1997. While Graham's requirement of a "meaningful opportunity for release" brought the abolishment of parole into focus, in providing for a remedy to Graham and Miller, the Legislature elected to provide for subsequent judicial review in the sentencing court of original jurisdiction, rather than review by a parole board.

The entire doctrine of statutory revival is premised on discerning legislative intent—in other words, attempting to ascertain what the Legislature would have decided had it known that its enacted statute was unconstitutional. See Horsley, 121 So. 3d at 1132 ("The advantage of relying upon the doctrine of statutory revival is that we simply revert to a solution that was duly adopted by the legislature itself—thereby avoiding the type of 'legislating from the bench' that would be required if we were to essentially rewrite the existing statute with original language which we feel might better meet the policy goals of the current legislature."). But, in light of the enactment of chapter 2014-220, Laws of Florida, we now actually know what the Legislature would do in response to Miller—adopt a remedy that does not provide for parole. Because the rationale for statutory revival is to foster separation of powers principles by returning to the previous

- 31 -

statute that best exhibits the Legislature's intent, reviving a statute that provides for parole as a remedy is clearly inconsistent with how the Legislature itself has remedied the statute.

There are other reasons not to adopt statutory revival as the remedy. Among these is that the statute the State seeks to revive is not actually the "immediate predecessor" statute, as required by B.H. v. State, 645 So. 2d 987 (Fla. 1994), but would rather require going back to the statute in effect before the "immediate predecessor" statute. See Partlow, 134 So. 3d at 1036 (Makar, J., concurring in part and dissenting in part). Another concern with statutory revival is that the revived statute would apply to only a subset of offenders—juveniles—for whom the subsequently enacted statute is unconstitutional as applied. As noted by Judge Altenbernd in Toye, "[i]f a statute has been amended in an unconstitutional manner, returning to the last properly enacted statute to assure that a statute exists for application to all persons makes sense," but it may not even be "permissible to revive a statute for application to a very small population of persons for whom the existing statute is essentially unconstitutional as applied." 133 So. 3d at 549 (Altenbernd, J., concurring).

Moreover, the State's proposed remedy is, in fact, much more than revival—it is judicial rewriting of the statute. Pure statutory revival, as articulated by Judge Makar in Partlow and adopted by the Fifth District in Horsley, would be to return

to the pre-1994 statute that provided for life with parole eligibility after twenty-five years as the only sentencing option for these juvenile offenders. The State, however, suggests that life <u>without</u> parole should still be an option that trial courts can consider, and acknowledges that <u>Miller</u> requires an individualized sentencing hearing in implementing that option. So, the State asks this Court to cobble together various statutes in order to arrive at its proposed remedy—declare unconstitutional only that part of the pre-2014 statute that does not allow for parole, then use chapter 2014-220, Laws of Florida, to provide for an individualized hearing, and revive the pre-1994 statute only if the trial court determines that life without parole under the now-rewritten pre-2014 statute is not proper. This we cannot do.

For all these reasons, we decline to adopt statutory revival as the remedy.

## C. This Case

We conclude our analysis by addressing how the remedy we have adopted applies in this case. On remand, the trial court should hold an individualized sentencing hearing pursuant to section two of chapter 2014-220, Laws of Florida, to consider the enumerated and any other pertinent factors "relevant to the offense and [Horsley's] youth and attendant circumstances." Ch. 2014-220, § 2, Laws of Fla. Because the jury concluded that Horsley actually possessed and discharged a firearm during the crime, the facts of this case establish that Horsley would be

classified as a juvenile offender "who actually killed, intended to kill, or attempted to kill" under section 1 of the legislation. Ch. 2014-220, § 1, Laws of Fla. Therefore, after holding the individualized hearing, the trial court should sentence Horsley to life imprisonment if the trial court finds that life is an appropriate sentence. Id. If the trial court determines that life is not an appropriate sentence, then the trial court should sentence Horsley to a term of at least forty years' imprisonment. Id. Either way, unless Horsley has a prior felony conviction from the enumerated list in section three of chapter 2014-220, Laws of Florida, arising out of a separate criminal transaction or episode, he will receive a subsequent judicial review of his sentence after twenty-five years. See ch. 2014-220, § 3, Laws of Fla.

**CONCLUSION**

In Miller, the United States Supreme Court concluded its decision with the following observations:

> Graham, Roper, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

Miller, 132 S. Ct. at 2475.

In light of <u>Miller</u>, all parties agree that Florida's prior sentencing statute that required the imposition of a mandatory sentence of life imprisonment without the possibility of parole for any offender convicted of a capital homicide offense is unconstitutional as applied to juveniles. To remedy this federal constitutional infirmity in the statute, the Legislature has now provided that all juvenile offenders must receive individualized consideration before the imposition of a life sentence and that most juvenile offenders are eligible for a subsequent judicial review of their sentences.

For all of the reasons we have explained—including that it is most consistent with legislative intent, with principles of separation of powers, and with the dictates of <u>Miller</u> itself—we reject the State's proposed remedy of statutory revival and hold that the appropriate remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under <u>Miller</u>. We conclude that applying chapter 2014-220, Laws of Florida, to offenders like Horsley is the only way to comply with the commandment of the United States Supreme Court and to effectuate the intent of our Legislature.

Accordingly, we answer the Fifth District's certified question regarding statutory revival in the negative, quash the underlying decision, and remand this case for resentencing in conformance with chapter 2014-220, Laws of Florida.

It is so ordered.

- 35 -

LABARGA, C.J., and LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Two Cases:

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

   Fifth District - Case No. 5D12-138

   (Brevard County)

James S. Purdy, Public Defender, and Kathryn Rollison Radtke, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

   for Petitioner/Respondent

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Wesley Harold Heidt, Assistant Attorney General, and Kellie Anne Nielan, Assistant Attorney General, Daytona Beach, Florida,

   for Respondent/Petitioner

Eric D. Schab, Graduate Fellow and Paolo Giuseppe Annino, Co-Director, Public Interest Law Center, FSU College of Law, Tallahassee, Florida,

   for Amicus Curiae Public Interest Law Center

Tatiana A. Bertsch, West Palm Beach, Florida, and Benjamin W. Maxymuk, Equal Justice Initiative, Montgomery, Alabama,

   for Amicus Curiae Kyle Walling