ORFINGER, J.
In Hurst v. Florida, - U.S. -, -, 136 act 616, 619, 193 L.Ed.2d 604 (2016), the United States Supreme Court held that Florida’s capital “sentencing scheme [is] unconstitutional. The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury’s mere recommendation is not enough.” The issue we address is the impact of Hurst on pending prosecutions for first-degree murder.[1] In addressing this issue, we must also consider the effect of legislation recently enacted in response to Hurst
I.
Larry D. Perry was indicted for first-degree murder and aggravated child abuse arising from the death of his son in February 2013. The State filed its notice of intent to seek the death penalty. Shortly after the Supreme Court’s Hurst decision, Perry filed a demand for speedy trial and moved to strike the State’s notice of intent to seek the death penalty, asserting that “Florida no longer has a death penalty statute.” Following a hearing, the trial court granted Perry’s motion to strike, reasoning that, without a procedure in place that complies with Hurst’s mandates, the State could not seek to impose the death penalty.
Similarly, William T. Woodward was indicted for two counts of first-degree murder arising from the deaths of two of his neighbors in September 2012. The State filed its notice of intent to seek the death penalty. Following Hurst, Woodward moved to prohibit the death qualification of the jury, arguing that after Hurst, there is “no constitutionally permitted version of the death penalty” in Florida. The trial court agreed, holding that “there currently exists no statutory authority in Florida under which the State can seek the death penalty.... ” In response to the trial courts’ rulings, the State filed petitions for writs of prohibition, seeking to prohibit the trial courts from striking its notice of intent to seek the death penalty in Perry’s case, and refusing to death qualify the jury or conduct a penalty phase proceeding in Woodward’s case.[2]
II.
We first consider whether prohibition is available in this matter. The State argues that prohibition is available because it has the exclusive discretion to decide whether to seek the death penalty in a given case and the trial court’s order im-permissibly invades this discretion. We agree.
Prohibition lies to prevent a court from acting without authority of law or in excess of its jurisdiction. English v. McCrary, 348 So.2d 293, 297 (Fla.1977). *73 “[A] circuit judge lacks authority to decide pre-trial whether the death penalty will be imposed in a first-degree .murder case.” State v. Bloom, 497 So.2d 2, 2 (Fla.1986). Absent certain exceptions inapplicable in this case, the State “has absolute discretion at pre-trial” to determine whether to seek the death penalty in a given case.[3] Id. at 3 (discussing State v. Jogan, 388 So.2d 322 (Fla. 3d DCA 1980)). Thus, we conclude that prohibition is appropriate when the trial court strikes a notice of intent to seek the death penalty or refuses to death qualify a jury in a capital case. See id. (concluding that pretrial death penalty determination by trial judge would unconstitutionally interfere with complete discretionary executive function vested in prosecutor to charge and prosecute cases); see also State v. Donner, 500 So.2d 532, 533 (Fla.1987) (explaining that judiciary cannot interfere with prosecutor’s decision to seek death penalty except where impermissible motives may be attributed to prosecution); Cleveland v. State, 417 So.2d 653, 654 (Fla.1982) (holding that statutory scheme for pretrial diversion created alternative to prosecution, which should remain in prosecutor’s discretion). Cf. Wade v. State, 41 So.3d 857, 874-76 (Fla.2010) (holding, on defendant’s appeal, that trial court did not err in denying motion to strike state’s notice of intent to seek death penalty because that decision was in prosecutor’s discretion).
III.
Turning to the merits, Perry and Woodward contend that Hurst leaves Florida without a death penalty. The State counters, arguing that Hurst struck down only Florida’s procedure for imposing the death penalty, not the death penalty itself. We agree with the State’s position.
Hurst determined that Florida’s “scheme” to impose the death penalty was unconstitutional, not the penalty itself. The Court recognized that section 775.082(1), Florida Statutes (2010), “does not make a defendant- eligible for death until ‘findings by the court that such person shall be punished by death.’” 136 S.Ct. at 622 (quoting § 775.082(1), Fla. Stat. (2010)). In holding Florida’s capital sentencing procedure unconstitutional, the Court was particularly concerned that “Florida does not require the jury to make the critical findings necessary to impose the death, penalty.” Id. We believe that Hurst’s holding is narrow and based solely on the Court’s determination that the “Sixth Amendment requires a jury, not a ■judge, to find each fact necessary to impose a sentence of death.” Id. at 619. Thus, we have no difficulty in concluding that Hurst struck the process of imposing a sentence of death, not the penalty itself.
IV.
After the State filed its petitions < in these eases, the Florida Legislature passed, and the Governor signed into law, new capital sentencing legislation in response to Hurst. See ch. 2016-13, Laws of Fla. We now consider the impact of this new legislation on Perry’s and Woodward’s pending prosecutions.
We consider two arguments opposing the application of the new legislation to pending cases. The first is that the new legislation does not apply because the Legislature has already provided an alternative sentence if the death penalty was deemed unconstitutional. This argument *74 is based on section 775.082(2), Florida Statutes (2015), which provides, in relevant part:
In the event the death penalty in a ■capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, the court -having jurisdiction over a' person previously sentenced to death for a capi*-tal felony shall cause such person to be brought before the court, and the court shall sentence such person to life imprisonment as provided in subsection (1).
(Emphasis added). Section 775.082(2) does not address the situation presented here because, by its express terms, the statute applies only to offenders “previously sentenced to death.” More importantly, for the reasons previously explained, the United States Supreme Court in Hurst did not hold that the. death penalty was unconstitutional',
The second .argument opposing the application of the new legislation to pending cases is that applying the new sentencing law would constitute an ex post facto violation under both United States and Florida Constitutions. Art. I, § 10, cl. 1, U.S. Const.; Art. I, § 10, Fla. Const. The ex post facto doctrine prohibits a state from “retroactively altering] the definition of crimes or increasing] the punishment for criminal acts.” Collins v. Youngblood, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Court held that ex post facto prohibitions reach only, those legislative, enactments that affect substantive criminal law. The Court summarized the categories of laws constituting substantive changes to criminal law:
[A]ny statute which punishes as a crime an act previously committed,’which was innocent when done; which, makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.
Id. (quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Thus, a legislative act affecting changes in criminal procedure, including procedural changes that disadvantage a defendant, generally does not violate the .ex post facto clause. Carmell v. Texas, 529 U.S. 513, 543-44, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (recognizing no one has vested right in mode of procedure); Collins, 497 U.S. at 45, 110 S.Ct. 2715 (“[Procedural] refers to changes in the procedures by which- a criminal case is adjudicated, as opposed to changes in the substantive law of crimes."). The question before us is whether Florida’s new capital sentencing statutes made a substantive or procedural change in the law as it existed when Perry’s and Woodward’s crimes allegedly occurred.
Dobbert is particularly instructive. Dob-bert-killed his children in 1972. At that time, Florida mandated a death sentence for capital felony convictions, unless the jury, in its discretion, recommended mercy to the judge. Shortly after Dobbert murdered his children, the Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which struck down the Georgia death sentencing statute as unconstitutional. A month later, in Donaldson v. Sack, 265 So.2d 499, 501 (Fla.1972), our supreme court held that-the Florida death sentencing , statute was also unconstitutional under Fuman. Later that year, the Florida Legislature enacted a new capital sentencing procedure to comply with Furman and Donaldson, under which Dobbert was tried, con *75 victed and sentenced to death. Dobbert, 432 U.S. at 284, 287-88, 97 S.Ct. 2290.
In attempting to overturn his death sentence, Dobbert failed to persuade the Supreme Court that sentencing him under the amended capital sentencing procedures violated the ex post facto clause. The Court limited ex post factb violations to those occurring when a statute criminalizes a previously innocent act, aggravates a crime previously committed, provides greater punishment, or changes the quantum of proof needed to convict a defendant. Id. at 292, 97 S.Ct. 2290 (quoting Beazell, 269 U.S. at 169-70, 46 S.Ct. 68). The Dobbert Court held that none of those categories applied to the new capital sentencing methods. Instead, the Court concluded that the statutory change between the two sentencing methods was “clearly procedural,” and “[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.” Id. at 293-94, 97 S.Ct. 2290. This is precisely what has occurred here.
More recently, in Horsley v. State, 160 So.3d 393 (Fla.2015), the Florida Supreme Court dealt with a juvenile offender whose life sentence in prison without the possibility of parole was deemed unconstitutional under Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Responding to Miller, the Florida Legislature enacted, and the Governor signed into law, a new juvenile sentencing law, which provided juveniles sentenced for non-homicide offenses with an opportunity for release. The question in Horsley was the impact of the newly-enacted legislation on offenders whose offenses predated the new law. In holding that the new law applied to offenders whose crimes predated its enactment) the ' Florida Supreme Court concluded that because the Legislature had cured the constitutional infirmity, applying the new law was “most consistent with the legislative intent regarding how to comply with Miller,” and it did not require the courts to fashion a “remedy out of whole cloth.” Horsley, 160 So.3d at 405, 406.
These cases indicate to us that ex post facto principles generally do not bar applying procedural changes to pending criminal proceedings and the general framework of a state’s statutory capital sentencing scheme is procedural in nature. Chapter 2016-13, Laws, of Florida, alters the process used to determine whether the death penalty will be imposed, but makes no change to the punishment attached to first-degree murder. The new sentencing statute added no new element, or functional equivalent of an element, to first-degree murder. Hence, the changes to our capital sentencing procedures do not resemble the type of after-the-fact legislative evil contemplated by the ex post facto doctrine.
Finally, we note that Hurst is an extension of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Ring was based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[4] Apprendi has been held to establish a rule of procedure. See McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir.2001); United States v. Sanders, 247 F.3d 139, 147 (4th Cir.2001). *76 Likewise, Ring has been classified as a procedural‘rule rather than a substantive one. See Schriro v. Summerlin, 642 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Logically, it follows that Hurst’s holding is also procedural rather than substantive.[5]
In sum, we hold that Hurst did not declare Florida’s death penalty to be unconstitutional and that chapter 2016-13, Laws of Florida, applies to pending prosecutions. Consequently, we grant the State’s petitions and issue the writs of prohibition.
Because the issues presented here involve questions of great public importance and' have a great effect on the proper administration of justice, we certify the following questions to the Florida Supreme Court:
1) DID HURST V. FLORIDA, - U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), DECLARE FLORIDA’S DEATH PENALTY UNCONSTITUTIONAL?
2) IF NOT, DOES CHAPTER 2016-13, LAWS OF FLORIDA, APPLY TO PENDING PROSECUTIONS. FOR CAPITAL OFFENSES THAT OCCURRED PRIOR TO ITS EFFECTIVE DATE?
PROHIBITION GRANTED; QUESTIONS CERTIFIED.
EVANDER and WALLIS, JJ., concur.

. First-degree murder is a capital felony in Florida. See § 782.04(1)(a), Fla. Stat. (2010). A person convicted of a capital felony shall be punished by death only if an additional sentencing proceeding "results in findings by the court that such person shall be punished by death....” § 775.082(1), Fla. Stat. (2010). This is a “hybrid” proceeding "in which [a] jury renders an advisory verdict but the judge makes the ultimate sentencing determinations.” Hurst, 136 S.Ct. at 620 (quoting Ring v. Arizona, 536 U.S. 584, 608 n. 6, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).

. We have consolidated these cases for purposes of disposition only.

. A narrow exception exists where the prosecutor in a particular case has impermissible motives such as bad faith, race, religion, or a desire to prevent the exercise of a constitutional right. Bloom, 497 So.2d at 3 (citing United States v. Smith, 523 F.2d 771, 782 (5th Cir.1975)). There is no allegation of an impermissible motive here.

. In Ring, the Supreme Court specifically held that the rule of law stated in Apprendi is applicable to capital defendants. That is — the "Sixth Amendment does not permit a defendant to be *expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.’ ” Ring, 536 U.S. at 588-89, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 483, 120 S.Ct. 2348).

. As our supreme court stated in Smiley v. State, 966 So.2d 330, 334 (Fla.2007):
In the analysis of a change in statutory law, a key determination is whether the statute constitutes a procedural/remedial change or a substantive change in the law. The rule for procedural/remedial changes, in contrast to the presumption against retroactive application for substantivé changes, is as follows:
Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.
City of Lakeland v. Catinella, 129 So.2d 133, 136 (Fla.1961) (emphasis added). Moreover, the “presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation’s intended purpose.” Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla.1994) (citing City of Orlando v. Desjardins, 493 So.2d 1027 (Fla.1986)).