NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                )
                                 )
         Petitioner,             )
                                 )
v.                               )        Case No. 2D16-446
                                 )
CARLOS BENITO JONES,             )
                                 )
         Respondent.             )
_____)
                                 )
STATE OF FLORIDA,                )
                                 )
         Petitioner,             )
                                 )
v.                               )        Case No. 2D16-647
                                 )
STEVEN CECIL DYKES,              )
                                 )
         Respondent.             )
_____)
                                 )
STATE OF FLORIDA,                )
                                 )
         Petitioner,             )
                                 )
v.                               )        Case No. 2D16-747
                                 )
CHARLES ANTHONY FOSTER,          )
                                 )
         Respondent.             )
_____)

| | |
|---|---|
| STATE OF FLORIDA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 2D16-865 |
| | ) |
| CARLOS RUBEN RIVAS, | ) CONSOLIDATED |
| | ) |
| Respondent. | ) |
| | ) |

Opinion filed August 10, 2016.

Petitions for Writs of Prohibition to the Circuit Court for Pinellas County; Philip J. Federico and Michael F. Andrews, Judges; and Petitions for Writs of Prohibition to the Circuit Court for Hillsborough County; Kimberly K. Fernandez and Samantha L. Ward, Judges.

Pamela Jo Bondi, Attorney General, Tallahassee, and Timothy A. Freeland and Stephen D. Ake, Assistant Attorneys General, and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, for Petitioner.

Bob Dillinger, Public Defender, and Sara B. Mollo and Edward J. Abare, III, Assistant Public Defenders, Clearwater, for Respondents Carlos Benito Jones and Steven Cecil Dykes.

Julianne M. Holt, Public Defender, and Theda R. James, Assistant Public Defender, Tampa, for Respondents Charles Anthony Foster and Carlos Ruben Rivas.

BLACK, Judge.

The State of Florida seeks four writs of prohibition, arguing that four trial judges in two circuit courts lacked authority to determine that, after the United States

Supreme Court's holding in Hurst v. Florida, 136 S. Ct. 616 (2016), the State could not proceed with these capital cases as death penalty cases. We grant the petitions.[1]

I.      Background

The four defendants, respondents here, allegedly committed homicides between 2011 and 2015. The State indicted each of them for first-degree murder and filed notices of intent to seek the death penalty. After the respondents were indicted, the Supreme Court issued Hurst, in which the Court held Florida's capital sentencing scheme unconstitutional. 136 S. Ct. at 619. The four respondents then sought rulings from the respective trial courts that, in light of Hurst, the courts could not sentence them to death.

In two cases, those underlying the petitions in 2D16-647 and 2D16-865, the respondents asked the courts to preclude their trials from proceeding as death cases. The State objected, but the courts scheduled the trials and prevented the parties from death-qualifying juries. In the other two cases, underlying the petitions in 2D16-446 and 2D16-747, the respondents sought to enter guilty pleas in exchange for the courts' guarantees of life sentences. Over the State's objections, the trial courts found that, as a result of Hurst, the only available sentence was life in prison. The courts then scheduled the plea hearings for future dates; none of the respondents had been convicted at that time. This court stayed the proceedings below after the State filed its petitions here.

II.      Issue

[1]We have consolidated the four cases solely for purposes of this opinion.

The State seeks writs of prohibition[2] challenging the trial courts' determinations that at the time the respondents were before the courts—pretrial—there did not exist statutory authority for the State to proceed with these cases as death penalty cases and that life imprisonment was the only available sentence.[3] We consider two intertwined issues: whether the trial courts were within their authority to prevent the State from prosecuting these cases as capital cases through the guilt phase and whether the courts were within their authority to make the pretrial determination that death was not an available sentence.[4]

[2]In case 2D16-446, the State seeks a writ of prohibition to disqualify the trial judge and, in the alternative, a writ of certiorari. The disqualification of the judge is not warranted because the State is challenging a mere adverse ruling by the court. See Areizaga v. Spicer, 841 So. 2d 494, 496 (Fla. 2d DCA 2003) ("A trial court's prior adverse rulings are not legally sufficient grounds upon which to base a motion to disqualify."). And despite our directive to the State to obtain a written order from the trial court, the trial court apparently "declined" to render an order recording its rulings. Thus, we cannot provide relief pursuant to our certiorari jurisdiction. See Fla. R. App. P. 9.100(c)(1); City of Key West Tree Comm'n v. Havlicek, 20 So. 3d 904 (Fla. 3d DCA 2009). Nevertheless, as the argument for a writ of certiorari parallels those for a writ of prohibition in the other three petitions, we treat the petition as such. See Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy."); Pridgen v. Bd. of Cty. Comm'rs of Orange Cty., 389 So. 2d 259, 260 (Fla. 5th DCA 1980) (holding rule 9.040(c) to be "mandatory").

[3]Although the courts' rulings differed slightly based on the arguments presented by the respondents, the rulings effectively reached the same pretrial conclusion: the State could not prosecute these cases pursuant to the capital crime procedures and the only available sentence for a capital conviction was life imprisonment.

[4]When faced with two petitions raising the same issues as those before us, the Fifth District granted the petitions based in part on the court's analysis of the amended statutes subsequently enacted. State v. Perry, 192 So. 3d 70, 74-75 (Fla. 5th DCA 2016), review granted, No. SC16-547, 2016 WL 1399241 (Fla. Apr. 6, 2016). Here, the primary argument of the State and of those respondents who addressed the issue was that the petitions should be resolved on the basis of the law in effect at the time the respondents appeared before the trial courts. While we resolve the cases based upon that approach, we expect that the amendments to the statutes found

Despite three respondents' challenges to the contrary, we can consider these petitions for writs of prohibition because the trial courts acted in excess of their jurisdiction.  See English v. McCrary, 348 So. 2d 293, 296 (Fla. 1977) ("Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction.").  Where the trial court refuses to allow a first-degree murder trial to proceed as a capital case "[a] writ of prohibition is the appropriate remedy" because the court has "interfere[d] with the prosecutorial discretion of a state attorney."  State v. Bloom, 497 So. 2d 2, 3 (Fla. 1986).

III.     Discussion

     A.     Bifurcated Procedure

In Florida, murder in the first degree is a capital felony, subject to a bifurcated procedure.  See §§ 782.04(1)(a) (establishing first-degree murder as a capital offense), 775.082(1), 921.141(1), Fla. Stat. (2011) (setting forth the bifurcated nature of the procedure);[5] see also  Coday v. State, 946 So. 2d 988, 1011-12 (Fla. 2006) ("The Florida Legislature . . . instituted a bifurcated procedure . . . . provid[ing] for a separate

---

unconstitutional by Hurst passed by the Florida Legislature and, on March 7, 2016, signed into law by the governor will apply to these cases on remand.  See ch. 2016-13, §§ 1-3, 7, at 155-60, 170, Laws of Fla.

     [5]We recognize that the dates of the offenses at issue include the statutory years 2011, 2012, and 2014.  Our citations reference only the 2011 version for the purposes of this opinion.  We note that section 775.082(1) was modified in 2014 to address the exceptional situation of offenses committed by juveniles, which is irrelevant here; the provision quoted is the same but is numbered section 775.082(1)(a).  See ch. 2014-220, § 1, at 2869, Laws of Fla.  Section 921.141(2), (3) did not change between 2010 and 2014.

proceeding to determine the appropriate sentence once the defendant ha[s] been found guilty of a capital offense.").

> A person who has been <u>convicted</u> of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.

§ 775.082(1) (emphasis added); <u>see also</u> § 782.04(1)(b) ("In all cases under this section, the procedure set forth in s. 921.141 shall be followed in order to determine sentence of death or life imprisonment."). Thus, the guilt phase of a capital case encompasses the finding of guilt or innocence and the conviction. It also includes the procedural requirements of a twelve-member, "death-qualified" jury. Fla. R. Crim. P. 3.270; <u>see generally</u> <u>Lockhart v. McCree</u>, 476 U.S. 162 (1986). A separate penalty phase is conducted to determine the appropriate sentence—life imprisonment or death—only after a defendant has been convicted of a capital crime. § 921.141(1); <u>Coday</u>, 946 So. 2d at 1011-12 ("Our new statutory scheme provided for a separate proceeding to determine the appropriate sentence once the defendant had been found guilty of a capital offense."); <u>Buford v. State</u>, 492 So. 2d 355, 358 (Fla. 1986) ("[U]nder Florida's bifurcated capital sentencing scheme, the sentencing judge and the reviewing court determine whether the defendant was convicted under circumstances which would prohibit imposition of the death sentence.").

      B.    Hurst

In <u>Hurst</u>, the United States Supreme Court found section 775.082(1) unconstitutional to the extent that the imposition of the death penalty—the sentence itself—was dependent on "findings by the court." 136 S. Ct. at 622. Because "[t]he

Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"—"[a] jury's mere recommendation is not enough"—the Court also struck down subparts (2) and (3) of section 921.141. Id. at 619, 620-22; see also § 775.082(1) ("A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death." (emphasis added)); § 921.141(2), (3) (providing that after the jury renders its "advisory sentence" as to life imprisonment or death, the court makes the final sentencing decision—whether life imprisonment or death—"[n]otwithstanding the recommendation of a majority of the jury"). The Court did not strike down the death penalty itself. Cf. Hurst, 136 S. Ct. at 624 (leaving it to Florida's state courts to perform a harmless error analysis). It likewise did not strike down section 782.04 or otherwise reduce first-degree murder to a noncapital offense. Nor did the Hurst ruling render the guilt phase requirements of capital cases unconstitutional. The Court found unconstitutional only the penalty phase procedures applicable to capital cases. Hurst simply has no impact on the State's executive decision to prosecute capital offenses.

C.    Application

The Florida Supreme Court has held that "the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute." Bloom, 497 So. 2d at 3. "[T]he Florida Constitution prohibits the judiciary from interfering with the prosecutor's decision to seek the death penalty in a first-degree murder case." State v. Donner, 500 So. 2d 532, 533 (Fla. 1987). That prosecutorial discretion and executive responsibility necessarily

encompasses both phases of Florida's bifurcated capital proceedings: the guilt phase and the penalty phase. See Bloom, 497 So. 2d at 3 (recognizing the bifurcated nature of Florida's statutory scheme and declining to create "a statutorily unauthorized trifurcated" procedure).

As to the first issue presented in these petitions, the respondents contend that the unconstitutional and remaining portions of the statutes are so intertwined that the whole death penalty scheme must fall, leaving the courts and parties unable to proceed with the cases as capital cases. Cf., e.g., Allen v. Butterworth, 756 So. 2d 52, 64-65 (Fla. 2000) (discussing whether the constitutional portions of a statute could be separated from the portions declared unconstitutional). This argument ignores both the bifurcated nature of Florida's capital proceedings and the narrowness of the Hurst holding. The decision to charge first-degree murder and prosecute the case as a capital offense through adjudication remains within the discretion of the state attorney. Thus, the trial courts acted in excess of their jurisdiction by preventing the State from prosecuting these respondents as capital offenders.

As to the second issue presented, our supreme court has held that a "pre-trial determination[] of the death penalty's applicability" creates a "statutorily unauthorized trifurcated death sentence procedure" which the trial judge had no authority to create. Bloom, 497 So. 2d at 3. Although Bloom is factually distinguishable, the holding that a court is without jurisdiction to determine a capital defendant's sentence prior to conviction is wholly applicable. See id.

Because none of the respondents have been convicted of capital offenses, the courts' rulings here are all pretrial. The lack of a penalty phase procedure

before the penalty is at issue—during the guilt phase and pretrial when the respondents are before the courts awaiting trial or conviction based on acceptance of a plea—does not preclude the State from charging the respondents with capital offenses and prosecuting the cases as capital cases.[6]  The trial courts simply have no authority to determine the applicability of the death penalty to defendants who have not been convicted of capital felonies.

Petitions granted.

SLEET and SALARIO, JJ., Concur.

---

[6]Given the narrowness of the Hurst holding, the expediency with which the legislature would amend the statutes should have been apparent to all involved in these cases.  Nonetheless, we need not address the possibility of an ex post facto violation. See art. I, § 10, cl. 1, U.S. Const.; art. I, § 10, Fla. Const.  There was no way for the trial courts to predict whether any statute drafted by the legislature in response to Hurst would represent an ex post facto violation.  However, we agree with the analysis in Perry to the extent that the court held that the amended statutes, see ch. 2016-13, §§ 1-3, at 155-60, Laws of Fla., do not represent an ex post facto violation with respect to the respondents there, who were similarly situated to the respondents here.  See Perry, 192 So. 3d at 74-75.