# Supreme Court of Florida

_____

No. SC15-2079
_____

**THOMAS KELSEY,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[December 8, 2016]

PERRY, J.

This case is before the Court for review of the decision of the First District

Court of Appeal in Kelsey v. State, 183 So. 3d 439 (Fla. 1st DCA 2015). In its

decision, the district court expressed concern and certified a question of great

public importance,[1] which we rephrase as follows:

_____

1. The following question was certified by the First District:

> Whether a defendant whose initial sentence for a
> nonhomicide crime violates Graham v. Florida, and who
> is resentenced to concurrent forty-five year terms, is
> entitled to a new resentencing under the framework
> established in chapter 2014-220, Laws of Florida?

Kelsey, 183 So. 3d at 442.

Is a defendant whose original sentence violated <u>Graham v. Florida</u>, 560 U.S. 48 (2010), and who was subsequently resentenced prior to July 1, 2014, entitled to be resentenced pursuant to the provisions of chapter 2014-220, Laws of Florida?

We have jurisdiction.  <u>See</u> art. V, § 3(b)(4), Fla. Const.  We answer the rephrased question in the affirmative.

## FACTS AND PROCEDURAL HISTORY

Thomas Kelsey was born on December 10, 1986.  The underlying offenses in this case occurred on November 6, 2002, when fifteen-year-old Kelsey burglarized an apartment and raped the pregnant victim at knifepoint in the presence of her two small children.  Kelsey was identified in 2008 based on a DNA match.  In 2009, Kelsey was charged with two counts of armed sexual battery, armed burglary, and armed robbery, and he pleaded guilty.  On March 26, 2010, a trial court sentenced Kelsey to two life sentences and two concurrent twenty-five-year terms for four nonhomicide offenses.  After the United States Supreme Court decided <u>Graham v. Florida</u>, 560 U.S. 48 (2010), Kelsey sought to withdraw his plea, which was denied.  At the resentencing held in January 2014, the trial court imposed concurrent sentences of forty-five years.[2]

---

2.  The sentences also run concurrently to a twenty-year sentence that Kelsey is serving pursuant to a revocation of probation on an unrelated offense.

On appeal, the First District Court of Appeal originally issued an opinion in Kelsey v. State, 183 So. 3d 439, 440 (Fla. 1st DCA 2015), comprised of one paragraph, holding:

> Even if Mr. Kelsey were entitled to resentencing under Henry [v. State, 175 So. 3d 675 (Fla. 2015)], which applied the new sentence review statute to a Graham-eligible defendant, he is not entitled to the benefit of the new sentence review statute because his previous convictions for another separate armed robbery and conspiracy to commit armed robbery disentitle him to relief. See § 921.1402(2)(a), Fla. Stat. (2014) ("[A] juvenile offender is not entitled to review if he or she has previously been convicted of one of the following offenses, or conspiracy to commit one of the following offenses . . . armed robbery.").

On Kelsey's motion for rehearing, the First District issued a revised opinion, reconsidering its legal analysis, and "concluding that [Kelsey] is not entitled to resentencing again." Id. Under its revised analysis, the First District opined that it was precluded from providing Kelsey the same relief afforded to Henry because Kelsey's forty-five-year prison term did not constitute a de facto life sentence in violation of Graham. Id. at 441 (citing Abrakata v. State, 168 So. 3d 251, 252 (Fla. 1st DCA 2015); Lambert v. State, 170 So. 3d 74, 76 (Fla. 1st DCA 2015)). Specifically, the First District stated, "Because the concurrent resentences at issue in this case do not violate Graham, we are constrained to deny relief." Id.

After recognizing our guidance in Thomas v. State, 135 So. 3d 590 (Fla. 1st DCA 2014), quashed, 177 So. 3d 1275 (Fla. 2015) (table decision), the First District distinguished Kelsey, opining that the decision in Thomas was based on

- 3 -

Miller v. Alabama, 132 S. Ct. 2455 (2012),[3] and its progeny, and not Graham. The

First District recognized that, "the supreme court appears to require that any

juvenile initially sentenced . . . in violation of Miller be sentenced under the new

framework regardless of what resentence may have been imposed in the interim."

Kelsey, 183 So. 3d at 441. However, the district court reasoned:

> Unlike Miller cases for which no valid remedy on resentencing was
> available until the recent legislation, a wide range of valid term of
> years sentences are available for [juveniles] whose original sentences
> were unconstitutional under Graham. If those resentences themselves
> violate Graham by providing no meaningful opportunity for release
> (as in Henry and Gridine [v. State, 175 So. 3d 672 (Fla. 2015)]), the
> supreme court requires resort[ing] to the 2014 legislative remedies.
> But the supreme court has not yet held that all resentencings and re-
> resentencings under Graham must also comply with the recent
> legislation. Our precedents have not held that a forty-five year
> sentence for a nonhomicide is a de facto life term to which Graham
> applies; nor has our supreme court. We are thereby constrained to
> affirm in this case, but recognizing the need for clarity on this
> category of Graham cases certify the following question . . . .

Id. at 442.

## DISCUSSION

### Standard of Review

Because the certified question of great public importance before this Court

presents a purely legal question, the appropriate standard of review is de novo. See

---

3. In Miller, the Supreme Court held that mandatory life sentences without
parole for crimes committed by juveniles violate the Eighth Amendment.

<u>Gridine</u>, 175 So. 3d at 674 (citing <u>Haygood v. State</u>, 109 So. 3d 735, 739 (Fla. 2013)).

## **Graham**

The United States Supreme Court's decision in <u>Graham</u> held that Florida's practice of sentencing juvenile offenders to life in prison for nonhomicide crimes violated the Eighth Amendment to the United States Constitution. For a period of nearly four years, the Florida Legislature left the trial courts and district courts of appeal to determine how to legally sentence juvenile nonhomicide offenders. In 2014, the Legislature passed chapter 2014-220, Laws of Florida, which provided judicial review for juvenile offenders who were tried as adults and received more than twenty years of incarceration, with exceptions. Following that, this Court, in a unanimous decision, decided that juveniles who receive sentences that do not provide a meaningful opportunity for release are entitled to be resentenced pursuant to chapter 2014-220, Laws of Florida. As we discuss further below, we conclude that our decision in <u>Henry v. State</u>, 175 So. 3d 675 (Fla. 2015), requires that all juvenile offenders whose sentences meet the standard defined by the Legislature in chapter 2014-220, a sentence longer than twenty years, are entitled to judicial review. We therefore hold that all juveniles who have sentences that violate <u>Graham</u> are entitled to resentencing pursuant to chapter 2014-220, Laws of

Florida, codified in sections 775.082, 921.1401 and 921.1402, Florida Statutes (2014).

To answer the First District's certified question, we first revisit the Supreme Court's decision in Graham. Terrance Jamar Graham received a withheld adjudication and was sentenced to probation for crimes he committed at the age of sixteen. He subsequently received a life sentence after violating that probation before he turned eighteen years of age. Graham, 560 U.S. at 53-57.

The Supreme Court began its analysis with its Eighth Amendment jurisprudence. Id. at 58. The Court noted that the core of the Eighth Amendment "is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " Id. at 59 (quoting Weems v. United States, 217 U.S. 349, 367 (1910)). The Court then noted that Graham presented a new categorical challenge to term-of-years sentences. Id. at 61 ("The present case involves an issue the Court has not considered previously: a categorical challenge to a term-of-years sentence."). Accordingly, the Court reasoned, the correct approach to the analysis would be the one used in cases such as Kennedy v. Louisiana, 554 U.S. 407 (2008), Roper v. Simmons, 543 U.S. 551 (2005), and Atkins v. Virginia, 536 U.S. 304 (2002). Graham, 560 U.S. at 61-62.

Opining that "Roper established that because juveniles have lessened culpability they are less deserving of the most severe punishments," Graham, 560

U.S. at 68 (citing <u>Roper</u>, 543 U.S. at 569), the Court pronounced a categorical rule. <u>Id.</u> at 75, 78, 79 ("Categorical rules tend to be imperfect, but one is necessary here." "A categorical rule avoids the risk that . . . a court or jury will erroneously conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonhomicide." "[A] categorical rule gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform."). The new categorical rule provided that:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

<u>Id.</u> at 82.

In this Court's discussions of <u>Graham</u>, we have underscored the Supreme Court's emphasis on the status of the juvenile nonhomicide offender and the nature of the offense committed. <u>See</u> <u>Henry</u>, 175 So. 3d at 675 (citing <u>Graham</u>, 560 U.S. at 69). Accordingly, our focus has not been on the length of the sentence imposed but on the status of the offender and the possibility that he or she will be able to grow into a contributing member of society. To understand this reading of <u>Graham</u>, we now turn to our decision in <u>Henry</u>.

**<u>Henry</u>**

Leighdon Henry, a juvenile offender who was tried as an adult, was convicted of multiple nonhomicide crimes and sentenced to life in prison plus an additional sixty years. Henry, 175 So. 3d at 676. After Graham issued, Henry's life sentence was vacated and he was resentenced to thirty years in prison, to run consecutively to the originally imposed sixty-year sentence. Id.

On appeal, we concluded "that Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation." Id. at 680. We reasoned that the "Supreme Court's long-held and consistent view that juveniles are different" supported the conclusion that "the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated." Id. Thus, we determined that Graham was not limited to certain sentences but rather was intended to insure that "juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation." Id. In light of this reasoning, we concluded that the Eighth Amendment, as read through Graham, requires a review mechanism for evaluating this class of offenders because "any term of

imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult." Id. Therefore, our holding in Henry was not predicated on the term of the sentence but rather on the status of, and the opportunity afforded, the offender. Indeed, the holding of Henry was unequivocal. Additionally, we determined that the remedy outlined in Horsley v. State, 160 So. 3d 393, 395 (Fla. 2015), applied to cases like Henry's. See Henry, 175 So. 3d at 680.

## **Horsley**

In Horsley, a juvenile offender tried as an adult was convicted of first-degree felony murder, among other offenses, and received a mandatory life sentence without the possibility of parole. After Miller, the trial court resentenced Horsley to life imprisonment without the possibility of parole. The Fifth District Court of Appeal vacated that sentence and certified a question of great public importance to this Court.[4] In our decision, we reasoned that "presented with this unique situation in which a federal constitutional infirmity in a sentencing statute has now been

---

4. The Fifth District asked: "Whether the Supreme Court's decision in Miller v. Alabama, [132 S. Ct. 2455 (2012)], which invalidated section 775.082(1)'s mandatory imposition of life without parole sentences for juveniles convicted of first-degree murder, operates to revive the prior sentence of life with parole eligibility after 25 years previously contained in that statute?" Horsley, 160 So. 3d at 397 (quoting Horsley v. State, 121 So. 3d 1130, 1132-33 (Fla. 5th DCA 2013)).

specifically remedied by our Legislature, we conclude that the proper remedy is to apply [that legislation] to all juvenile offenders whose sentences are unconstitutional in light of Miller." Horsley, 160 So. 3d at 395.

Miller held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," even for juveniles convicted of homicide crimes. Miller, 132 S. Ct. at 2469. While the remedy articulated in Horsley initially only applied to those juvenile defendants whose sentences violated the Eighth Amendment pursuant to Miller, we extended the reasoning of Horsley to those juveniles whose sentences violated the Eighth Amendment pursuant to Graham in Henry. See Henry, 175 So. 3d at 680. We have since reaffirmed that application of the new statute is the appropriate remedy. See Thomas v. State, 177 So. 3d 1275 (Fla. 2015).

Reading together our decisions in Henry, Horsley, and Thomas, it is clear that we intended for juvenile offenders, who are otherwise treated like adults for purposes of sentencing, to retain their status as juveniles in some sense. In other words, we have determined through our reading of the Legislature's intent in passing chapter 2014-220, Laws of Florida, that juveniles who are serving lengthy sentences are entitled to periodic judicial review to determine whether they can demonstrate maturation and rehabilitation. It would be antithetical to the precept of Graham and chapter 2014-220, Laws of Florida, to interpret them so narrowly as

- 10 -

to exclude a juvenile offender who happens to have been resentenced before this Court issued <u>Henry</u>. With these considerations in mind, we turn to the present case.

**This Case**

Kelsey represents a narrow class of juvenile offenders, those resentenced from life to term-of-years sentences after <u>Graham</u>, for crimes committed before chapter 2014-220's July 1, 2014, effective date. Kelsey argues that his sentence does not currently provide the relief specified in our previous decisions and seeks the judicial review granted to other defendants who, like him, were sentenced to terms that will not provide them a meaningful opportunity for relief in their respective lifetimes. We agree.

After we made clear that <u>Graham</u> does indeed apply to term-of-years sentences, we have declined to require that such sentences must be "de facto life" sentences for <u>Graham</u> to apply. <u>See, e.g.</u>, <u>Guzman v. State</u>, 183 So. 3d 1025, 1026 (Fla. 2016). By using chapter 2014-220 as a guide, we avoid second-guessing the legislative contemplation that resulted in the twenty-year cutoff for judicial review contained in the law. However, in applying chapter 2014-220, we agree with the State that the new sentencing scheme contemplates the possibility of a life sentence for a juvenile nonhomicide offender. <u>See</u> <u>Horsley</u>, 160 So. 3d at 404 ("Juveniles convicted of nonhomicide offenses, thereby implicating <u>Graham</u> rather than <u>Miller</u>,

- 11 -

also may be sentenced to life imprisonment if the trial court, after considering the specified factors during an individualized sentencing hearing, determines that a life sentence is appropriate." (citing ch. 2014-220 §§ 1, 3, Laws of Fla.)). Because we determine that resentencing is the appropriate remedy, the trial courts may embrace all of the provisions of chapter 2014-220 and are not required to limit themselves to only applying the judicial review provision. This would mean that if the State seeks a life sentence, the trial court's determination would have to be informed by individualized sentencing considerations.

Kelsey further argues that he has a reasonable expectation of finality in his forty-five-year prison term because his term is lawful apart from its failure to provide judicial review. We disagree.

In Ashley v. State, 850 So. 2d 1265, 1267 (Fla. 2003), we held that "[o]nce a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles." (citing Lippman v. State, 633 So. 2d 1061 (Fla. 1994); Clark v. State, 579 So. 2d 109 (Fla. 1991)). To do so, we articulated, was a clear violation of the Double Jeopardy Clause. Id. (citing State v. Wilson, 680 So. 2d 411, 413 (Fla. 1996)). In 2012, we clarified that jeopardy attaches only to a legal sentence. Dunbar v. State, 89 So. 3d 901, 905 (Fla. 2012) (citing Harris v. State, 645 So. 2d 386 388 (Fla. 1994)).

Therefore, jeopardy has not attached to Kelsey's illegal sentence, and when he is resentenced according to the provisions of chapter 2014-220, the State may again seek life imprisonment with judicial review. Kelsey originally began serving his sentence as a life sentence, but that sentence became illegal when the Supreme Court issued Graham and Kelsey successfully sought relief. However, his sentence was unconstitutional not because of the length of his sentence, but because it did not provide him a meaningful opportunity for early release based on maturation and rehabilitation. Accordingly, Kelsey's resentencing under the provisions of chapter 2014-220 would not place him in any worse position than he would have been had he initially faced post-Graham resentencing under the statute.

For these reasons, there is no compelling reason that the State must be precluded from seeking a life sentence that complied with Graham:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance.

Graham, 560 U.S. at 75. In Henry, we determined that the Legislature's remedy was the appropriate remedy in these cases, and the Legislature has determined that the "means and mechanisms for compliance" with Graham are to provide judicial review for juvenile offenders who are sentenced to terms longer than twenty years. Therefore Kelsey is entitled to resentencing under those provisions. We therefore

answer the rephrased question in the affirmative and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LABARGA, C.J., and PERRY, J., concur.
POLSTON, J., dissents with an opinion, in which LEWIS and CANADY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring.

I concur with the majority that juvenile offenders like Kelsey, who were previously resentenced after the United States Supreme Court decided Graham v. Florida, 560 U.S. 48 (2010), but before the Legislature enacted chapter 2014-220, Laws of Florida, are entitled to resentencing under this sentencing scheme. Majority op. at 14. Resentencing under this new juvenile sentencing scheme includes, in most instances, the benefit of judicial review of the sentence as set forth in section 921.1402(2), Florida Statutes (2014). See majority op. at 11-12.

I write to emphasize that, in this case, even though our precedent in Dunbar v. State, 89 So. 3d 901 (Fla. 2012), does not preclude the State from seeking a life sentence on remand because Kelsey's previously imposed sentence was illegal, the individualized sentencing consideration required by Graham and our juvenile sentencing precedent will likely preclude such a sentence. Indeed, as I explain

- 14 -

below, I would conclude that Kelsey is precluded from being resentenced to a term exceeding his current forty-five-year sentence when the sentencing court takes into account all of the sentencing factors set forth in section 921.1401(2).

As we explained in Landrum v. State, chapter 2014-220 sets forth the individualized sentencing considerations that a sentencing court must consider "when determining if a juvenile offender should be sentenced to life imprisonment." 192 So. 3d 459, 466 (Fla. 2016). These considerations have since been codified in section 921.1401(2), Florida Statutes (2014), and include the following sentencing factors:

(a) The nature and circumstances of the offense committed by the defendant.

(b) The effect of the crime on the victim's family and on the community.

(c) The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.

(d) The defendant's background, including his or her family, home, and community environment.

(e) The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.

(f) The extent of the defendant's participation in the offense.

(g) The effect, if any, of familial pressure or peer pressure on the defendant's actions.

(h)  The nature and extent of the defendant's prior criminal history.

(i)  The effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment.

(j)  The possibility of rehabilitating the defendant.

The record in this case demonstrates that, while the sentencing court did not consider all of the above factors, the sentencing court was aware that the Legislature was at the time considering legislation later enacted as chapter 2014-220, Laws of Florida.  Indeed, the sentencing court considered some of the individualized sentencing considerations since codified in section 921.1401(1) when determining whether to again sentence Kelsey to life in prison or to some lesser term.  As the court explained:

> We have to make a decision based on what we know about a person's history, taking into account their psychological condition, their mental health, their age, you know, disabilities, severity of the crime, and all of the factors that [the psychologist] went over and defense counsel has adequately covered.

Further, the sentencing court heard testimony from a psychologist who had evaluated Kelsey, and whose testimony underscored "the special status of juvenile offenders for purposes of criminal punishment."  Henry v. State, 175 So. 3d 675, 677 (Fla. 2015).  As the psychologist explained:

> So, you have a 15 year old with a 80 IQ, borderline intellectual functioning, maybe even a lower achievement at that age, maybe, I don't know.  And then you have an adolescent, young brain develop[ment], where they have low decision making ability, frontal

lobe not being developed, executive functioning not being developed, and that's compounded by an IQ in the borderline range.

Secondary, you have a kid whose, you know, in a marginal lifestyle, some trouble, maybe some special education, and he's not functioning very high in terms of cognitive ability and he's hanging out with what we call deviant peers. And so—well, I don't that, I didn't see him when he was 15, I'm making some hypothesis from evaluating juveniles over the years, and often juveniles with this level of functioning start doing bad things, start doing delinquent type things because they're faced with the choice of being called lots of names, retarded, dumb, dummy, and they don't want to be called those things and the way to get around that is to start acting out, and so they can be called bad, and they get identified as bad, and that's part of their personality, and it's the way they get accepted, and knowledge of deviant peer groups, but they want to fight against being called dumb or any of those derogatory words that teenage boys are apt to use. And so, they overcompensate and they get tough and street tough and start acting tough, and they start looking like the delinquent kid, and it's really because of the way they are in their life, without enough positive adult mentoring peer, without enough appropriate prosocial peer groups. So, it has, sorry to use this word, it has a waterfall effect, you know.

These statements demonstrate that the sentencing court was cognizant of the United States Supreme Court's command that the "status of juvenile offenders warrants different considerations by the states whenever such offenders face criminal punishments as if they are adults." Id. at 678. Therefore, even though chapter 2014-220 "contemplates the possibility of a life sentence for a juvenile nonhomicide offender," majority op. at 12, I would conclude that such a possibility is slim. This is especially so in this case, where the sentencing court previously tried to comply with Graham during resentencing, expressly considered some of the sentencing factors now codified in section 921.141, and sentenced the juvenile

- 17 -

offender to concurrent sentences of forty-five years.  Put simply, upon resentencing, the sentencing court must consider whether Kelsey is the "rare juvenile offender whose crime reflects irreparable corruption," and thereby warrants a life sentence.  Horsley, 160 So. 3d at 397 (citing Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012)).  In my view, imposing a lengthier sentence in this nonhomicide case upon consideration of additional individualized sentencing factors would violate the basic "precept of justice that punishment for crime should be graduated and proportioned to [the] offense."  Landrum, 192 So. 3d at 460-61 (quoting Graham, 560 U.S. at 59) (noting that upholding a juvenile offender's life without parole sentence for second-degree murder "would violate this precept, as a juvenile convicted of the lesser offense of second-degree murder would receive a harsher sentence than a juvenile convicted of first-degree murder").

LABARGA, C.J., and PERRY, J., concur.

POLSTON, J., dissenting.

When Kelsey was fifteen years old, he committed burglary and raped a pregnant woman at knifepoint in front of her two small children.  Unlike the majority, I would approve the First District Court of Appeal's decision affirming Kelsey's resentencing for these crimes.  I also would answer the question as certified in the negative and hold that "a defendant whose initial sentence for a nonhomicide crime violate[d] Graham v. Florida, and who [was] resentenced to

concurrent forty-five year terms, is [not] entitled to a new resentencing under the framework established in chapter 2014-220, Laws of Florida." Kelsey v. State, 183 So. 3d 439, 442 (Fla. 1st DCA 2015).

In Graham v. Florida, 560 U.S. 48, 82 (2010), the United States Supreme Court held the following:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

Subsequently, this Court in Henry v. State, 175 So. 3d 675, 676 (Fla. 2015), reviewed a district court decision holding that Graham "does not apply to term-of-years prison sentences because such sentences do not constitute life imprisonment." This Court disagreed and held "that Graham does apply and that the sentence at issue will not provide a meaningful opportunity for release." Id. Specifically, this Court explained that "Graham requires a juvenile nonhomicide offender, such as Henry, to be afforded such an opportunity during his or her natural life." Id. at 679. Then, this Court explained that, "[b]ecause Henry's aggregate sentence, which totals ninety years and requires him to be imprisoned until he is at least nearly ninety-five years old, does not afford him this opportunity, that sentence is unconstitutional under Graham." Id. at 679-80.

- 19 -

In contrast to Henry, Kelsey was sentenced to an aggregate of forty five years for crimes he committed when he was fifteen years old. Because Kelsey's term-of-years aggregate sentence is not a de facto life sentence, Kelsey will have a meaningful opportunity for release during his natural life. Therefore, Kelsey's aggregate sentence does not violate Graham, and he is not entitled to resentencing. Cf. Henry, 175 So. 3d at 680 ("Because we have determined that Henry's sentence is unconstitutional under Graham, we conclude that Henry should be resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch. 2014-220, Laws of Fla.").

Accordingly, I respectfully dissent.

LEWIS and CANADY, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

First District - Case No. 1D14-518

(Duval County)

Nancy Ann Daniels, Public Defender, and Glen Phillip Gifford, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, Florida,

for Respondent

Julianne M. Holt, President, Tampa, Florida; and Jonathan Harris Greenberg, Assistant Public Defender, Miami, Florida,

for Amicus Curiae Florida Public Defender Association, Inc.

Paolo Giuseppe Annino of FSU College of Law Public Interest Law Center, Tallahassee, Florida; and Marsha L. Levick of the Juvenile Law Center, Philadelphia, Pennsylvania,

for Amici Curiae FSU College of Law Public Interest Law Center, Juvenile Law Center, ACLU of Florida, CFFSY, The Center on Children and Families at UF, Children and Youth Law Clinic at UM, FACDL, FCF, FJRRP At FIU, FLS, National Association of Counsel for Children, NAFPD, NJDC, SJDC, and SPLC