DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**COREY B. JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-0876

[February 14, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cheryl A. Caracuzzo, Judge; L.T. Case No. 502018CF002758AMB.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The constitutional parameters for sentencing a defendant, a juvenile when he committed the crimes, is raised in this appeal. The defendant appeals his convictions and sentences for one count of first-degree murder and two counts of attempted first-degree murder. The defendant raises six arguments: three relate to evidence and three relate to sentencing. We affirm on all issues and write to address only the defendant's constitutional argument regarding his consecutive life sentences.

- ***The Facts***

The defendant, who was seventeen when he committed the crimes, had a best friend named Kyle. As they grew up together, the defendant spent a lot of time at Kyle's house and occasionally slept over.

In 2017, the defendant converted to Islam. Kyle noticed an immediate change in the defendant and witnessed his beliefs become more extreme

over time.  The defendant confided in Kyle that he felt depressed.  The defendant also confided in Kyle that he was secretly messaging with a woman named Hafsa.  The defendant later shared Hafsa had ceased all communications without warning, which left him feeling devastated.

Unbeknownst to Kyle, the defendant's relationship with Hafsa was grounded in a mutual attraction to, appreciation for, and desire to commit unspeakable violence.  Hafsa routinely told the defendant she was sexually attracted to killing, and the two frequently exchanged graphic videos.[1]  Also unbeknownst to Kyle, the defendant had been planning a "*Qital*" (meaning "war") with Hafsa for some time.

On the day of the defendant's premeditated attack, he purchased a six-inch utility knife.  The defendant then attended a birthday dinner celebration with Kyle, Kyle's mother, Kyle's brother, and Kyle's brother's friend Jovanni.  After dinner, the defendant and Jovanni joined Kyle and his family at their home for a sleepover.  The boys "hung out" briefly, then all prepared for bed and fell asleep.

Once everyone was asleep, the defendant began his attack, starting with Jovanni.  The defendant viewed Jovanni as the "easiest" to kill given his sleeping location.  The defendant also thought he could kill Jovanni quietly, but explained to the police he knew he had "messed up" when Jovanni started screaming.

Jovanni's screaming woke up Kyle's mother, who first came to check on the noise.  Upon so doing, Kyle's mother saw the defendant standing over Jovanni's body, holding a knife, covered in blood.

Kyle's mother tried to grab the knife from the defendant, but he stabbed her in the neck and chest.  The defendant cut both of her wrists and sliced her Achilles tendon.  The mother also suffered multiple lacerations to her forehead, chin, neck, chest, left wrist, and right elbow.

Kyle's brother next awoke.  The defendant later admitted he attacked Kyle's brother to "prevent him from calling the police."  Kyle's brother sustained thirty stab wounds.

The defendant last entered Kyle's bedroom, still holding the bloody knife, and explained he had killed Jovanni and Kyle's brother.  The

---

[1] A litany of digital media later extracted from the defendant's phone included videos of beheadings, other acts of torture, and general ISIS propaganda.

2

defendant assured Kyle he was "not kidding," but that, because of their friendship, Kyle would not be hurt.

Kyle's mother simultaneously ran next door, and a neighbor called 911. Kyle's brother escaped from the second floor. Jovanni succumbed to his injuries and passed away before law enforcement arrived.

Once on scene, police officers watched the defendant enter a closet holding a knife. Eventually, a SWAT team used tear gas to force the defendant out. The defendant surrendered to law enforcement while repeating "*Allah*" and "*Akbar*."[2]

When the officers took the defendant into custody, they found a letter on his person. The letter was written in Arabic and intended for Hafsa. The letter thanked Hafsa for caring about him and alerted her that he had sent pictures of Kyle's brother, Jovanni, and himself holding the knife to her phone.

The State charged the defendant with one count of first-degree murder and two counts of attempted first-degree murder. The defendant pleaded not guilty by reason of insanity. The jury found the defendant guilty of all charges.

The defendant was seventeen when he committed the crimes and twenty-one when he was convicted and sentenced. The trial court considered each factor enumerated in section 921.1401, Florida Statutes (2017), in sentencing the defendant.

Ultimately, the trial court sentenced the defendant to life imprisonment for each charge, specifically ordering his two life sentences for attempted murder (counts II and III) run concurrently with each other and consecutively to the life sentence for murder (count I). The trial court orally announced the defendant would be eligible for judicial review on two occasions: after serving twenty-five years on count I and again after twenty-five years served on his consecutive life sentences for counts II and III.

The defendant filed a Florida Rule of Criminal Procedure 3.800(b)(1) motion, raising two challenges. First, the defendant argued his consecutive life sentences violated the Eighth Amendment because they precluded release based on demonstrated maturity and rehabilitation (upon review of his murder sentence only). The trial court denied that

---

[2] The correct phrase is "*Allahu Akbar*," Arabic for "god is most great."

portion of the defendant's motion, relying on *Hegwood v. State*, 308 So. 3d 647 (Fla. 4th DCA 2020), and *Warthen v. State*, 265 So. 3d 695 (Fla. 4th DCA 2019).

Second, the defendant challenged the constitutionality of his sentence as an impermissible "pre-determination" in violation of due process. The trial court denied that portion of the defendant's motion "without elaboration." From his convictions and sentences, the defendant now appeals.

- ### *The Analysis*

The defendant argues his consecutive life sentences violate the Eighth Amendment because they preclude his release from incarceration after his first life sentence's twenty-five-year judicial review. The State responds the consecutive sentences are constitutional because the defendant received individualized sentencing proceedings and will receive review for each life sentence.

We agree with the State and affirm. We hold a defendant sentenced to life without parole for one homicide offense, consecutively followed by two concurrent life-without-parole sentences for related nonhomicide offenses, is constitutional because the defendant has an opportunity for "meaningful review."

"Because a motion to correct a sentencing error involves a pure issue of law, our standard of review is de novo." *Metellus v. State*, 310 So. 3d 90, 92 (Fla. 4th DCA 2021) (quoting *Brooks v. State*, 199 So. 3d 974, 976 (Fla. 4th DCA 2016)).

Here, the trial court sentenced the defendant to three terms of life imprisonment, ordering his life sentences for the nonhomicide offenses run concurrent to each other but consecutive to his first life sentence for his homicide offense. Because each life sentence must be reviewed after twenty-five years, the defendant's sentences will first be reviewed twenty-five years into his first life sentence. However, because the life sentences on the nonhomicide offenses run consecutively, he will *not* be eligible for release irrespective of his first review's findings. Instead, he will only be eligible for review in another twenty-five years. Thus, the defendant will not be eligible for release until the expiration of fifty years.

The defendant argues three points: (1) the trial court incorrectly relied on *Warthen*; (2) *Hegwood* does not compel an affirmance; and (3) *Purdy* intentionally left open the question which his appeal now presents. The

State responds the Florida Legislature enacted sections 775.082,[3] 921.1401, and 921.1402, Florida Statutes (2017), "[i]n direct response to the Supreme Court's decisions in *Miller* and *Graham*," and the cases cited by the defendant are inapplicable. *See Horsley v. State*, 160 So. 3d 393, 406 (Fla. 2015).

A trial court's discretion in sentencing is quite broad within applicable statutory limits. *See Apprendi v. New Jersey*, 530 U.S. 466, 481–82 (2000); *see also Hoskins v. State*, 965 So. 2d 1, 18 (Fla. 2007) ("Trial courts are in the best position to observe the unique circumstances of a case and have broad discretion . . . .").

The United States Supreme Court has reviewed the constitutionality of life sentences without parole for juveniles in *Graham v. Florida*, 560 U.S. 48, 75 (2010), and *Miller v. Alabama*, 567 U.S. 460, 469 (2012). In *Graham*, the Court reviewed a juvenile's life sentence without parole for a nonhomicide crime. 560 U.S. at 75. The Court reached the conclusion the life sentence violated the Eighth Amendment. *Id.* Subsequently, in *Miller*, the Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison [for a homicide offense] without possibility of parole for juvenile offenders." 567 U.S. at 479.

*Graham* and *Miller*, however, considered a single life sentence for a single crime. The United States Supreme Court has yet to determine the constitutionality of consecutive life sentences for a juvenile.

Subsequently, in *State v. Purdy*, 252 So. 3d 723, 725 (Fla. 2018), our supreme court had the opportunity to review a juvenile's life sentence without parole for a homicide offense and a consecutive sentence of ten years for nonhomicide offenses (armed robbery and armed carjacking). There, a juvenile defendant filed a Rule 3.800 motion concerning his life sentence without parole but did not ask for review of his consecutive term of years sentence. *Id.* at 727–28. The trial court reduced his life sentence to forty years but did not modify the consecutive sentence. *Id.*

At the defendant's judicial review hearing on the life sentence, the trial court reduced the forty-year sentence to twenty years, six months, and thirteen days followed by ten years' probation. *Id.* at 728. The trial court did not review the consecutive ten-year sentence. *Id.* The Fifth District

---

[3] Our supreme court, in *Brown v. State*, 260 So. 3d 147, 150 (Fla. 2018), held section 775.082(10) unconstitutional. *Brown* does not affect this Court's analysis.

reversed and remanded the case with instruction to review the defendant's consecutive ten-year sentence.  *Id.*

Our supreme court ultimately held "[b]ecause the plain language of the juvenile sentencing statutes does not provide for aggregation of sentences at judicial sentence review," the trial court was not required to review the aggregate sentence at the same sentencing proceeding.  *Id.*  This left unanswered whether consecutive life sentences violate the Eighth Amendment when they run concurrent to another life sentence, as presented in this case.

In 2019, we held consecutive sentences of fifteen and twenty-five-year terms for different nonhomicide offenses did not constitute an aggregate sentence implicating a juvenile's Eighth Amendment rights.  *Warthen*, 265 So. 3d at 697.

Then, in 2020, we held three consecutive life sentences for homicide offenses—coupled with a concurrent life sentence for a nonhomicide offense—did not violate the Eighth Amendment.  *Hegwood*, 308 So. 3d at 648–49.  We nonetheless remanded the case because judicial review of the life sentence was required after twenty-five years (not seventy-five years) under section 921.1402, Florida Statutes.  *Id.* at 649.

That same year, the Second District reached a different conclusion under different facts.  *See Mack v. State*, 313 So. 3d 694 (Fla. 2d DCA 2020).  There, the court held a life sentence for a homicide offense, followed by a consecutive life sentence for a related nonhomicide offense, violated the Eighth Amendment.  *Id.* at 695, 698.  In reaching this holding the Second District explained the statutorily required "opportunity for release" after twenty-five years would be "wholly illusory" if the defendant's consecutive life sentence rendered him ineligible for release upon his first judicial review.  *Id.* at 696.

Most recently, and specifically during the pendency of this appeal, the Second District distinguished its decision in *Mack* and adopted our decision in *Hegwood*.  *See Garner v. State,* 48 Fla. L. Weekly D1841, 1841–43 (Fla. 2d DCA Sept. 15, 2023).  In *Garner*, a juvenile defendant had been sentenced to two consecutive life sentences without parole for two related homicides occurring during one crime spree.  *Id.* at D1841.  Relying on *Hegwood*, the Second District held the juvenile's consecutive life sentences for the *homicide* offenses did not violate the Eighth Amendment because each sentence allowed for a judicial review after twenty-five years.  *Id.* at D1843.

6

This case does not involve more than one homicide offense and is thus different from *Hegwood*. The instant facts are more akin to *Mack*, as here the defendant was sentenced to life without parole for one homicide offense, followed by two concurrent life-without-parole sentences for related nonhomicide offenses. Nonetheless, we decline to follow *Mack*.

As the United States Supreme Court has taught us:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation . . . . [W]hile the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. **Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life**. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Graham*, 560 U.S. at 75 (emphasis added). Thus, the prohibition is not against the life sentence itself, but rather against "making the judgment at the outset that those offenders never will be fit to reenter society" for committing a nonhomicide offense. *Id.*

The Constitution requires "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" and the sentence serve a penological purpose. *Id.* Here, the trial court provided the defendant with that meaningful opportunity to obtain release based on his demonstrated maturity and rehabilitation. The defendant will have a meaningful review of his first life sentence after twenty-five years and a second meaningful review of his consecutive life sentences twenty-five years later. The defendant could thus be released after fifty years. His sentence does not violate the Eighth Amendment.

Because our decision expressly and directly conflicts with the Second District's decision in *Mack v. State*, 313 So. 3d 694 (Fla. 2d DCA 2020), we certify conflict, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(iv).

*Affirmed.*

CIKLIN and GERBER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**